**Ex parte Charles S. BREGENZER, Relator.**

**No. 01–89–01000–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 17, 1991.

Rehearing Denied Feb. 7, 1991.

Richard S. Brown, Houston, for relator.

Robert Warhola, Harris Co. Domestic Relations Officer, Houston, for respondent.

Before EVANS, C.J., and DUNN and HUGHES, JJ.

## OPINION

EVANS, Chief Justice.

This is an original habeas corpus proceeding. On October 4, 1989, the trial court found relator in contempt for failure to pay court ordered child support. The court-ordered relator confined to the Harris County jail from day to day until he paid a lump sum of $10,000 for child support arrearage, $700 for attorney's fees, and costs.

This Court granted relator's writ of habeas corpus on October 12, 1989, set bond at $250, and ordered relator released from jail pending final determination of the matter. In his petition, relator alleged he was financially unable to purge himself of the contempt, both at the time of trial and in this proceeding. Because relator's petition did not conclusively show his financial inability to discharge himself from the contempt, and because we were not provided with a statement of facts from the contempt hearing, we were unable to determine relator's present financial ability to discharge the contempt. Thus, on December 21, 1989, this Court abated the proceeding, and ordered the trial court to conduct a hearing to determine relator's present financial condition. We further directed the trial court to make appropriate findings and to prepare a record of the proceedings. The statement of facts from that hearing has been filed with this Court.

Although not presented as a point of error in his petition for writ of habeas corpus, relator raised, in response to the motion for contempt, the issue of the trial court's lack of jurisdiction to enter a con-

tempt order. The allegation of lack of jurisdiction presents a fundamental question for our consideration. *Tullos v. Eaton Corp.*, 695 S.W.2d 568 (Tex.1985); *see also Lopez v. State*, 756 S.W.2d 49, 50–51 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd). Therefore, we must first determine whether the trial court had the requisite jurisdiction to enter the contempt order.

The Texas Family Code provides:

(b) *Time Limitations.* The court retains jurisdiction to enter a contempt order if a motion for contempt for failure to comply with a court's child support order is filed within six months after:

(1) the child becomes an adult; or

(2) the date on which the child support obligation terminates pursuant to the decree or order or by operation of law.

Tex.Fam.Code Ann. § 14.40(b) (Vernon 1986).

■ The divorce decree ordered relator to pay child support in the amount of $1800 per month until the child turned 18 or was otherwise emancipated. The child attained the age of 18 on January 13, 1989. Thus, the real party-in-interest, Ms. Lynette Bregenzer, had to file her motion for contempt within six months of January 13, 1989, or before July 13, 1989.

The motion made the basis of the court's contempt order is a first amended motion for contempt filed by Ms. Bregenzer on September 18, 1989. However, Ms. Bregenzer filed her original motion for contempt on September 20, 1985. Our law provides that an amendment or supplement to a pleading "that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence." Tex.Civ.Prac. & Rem.Code Ann. § 16.068 (Vernon 1986). Because the original motion for contempt was filed within the limitations period, the only question is whether the amended motion sets forth a wholly "new, distinct, or different transaction or occurrence."

In her original motion, Ms. Bregenzer alleged relator failed to timely make an $1,800 child support payment due June 1, 1985, and three $1,800 child support payments due July 1, August 1, and September 1, 1985; failed to pay incurred medical expenses; and failed to maintain health insurance for the minor child. The first amended motion for contempt asks only that relator be held in contempt for failure to pay child support of $1800 per month from December 1, 1984, through January 1, 1989, including the payments due for June, July, August, and September 1985.

We conclude the amended motion does not allege a wholly new and distinct transaction, and the basis for the complaint is still the same, i.e., relator's failure to pay child support as ordered for the month specified. The amended motion simply modifies the original motion by adding new dates of nonpayment and showing a different arrearage. We hold the amended motion for contempt, although filed after the limitation period had expired, relates back to the filing of the original motion, and thus the trial court did have jurisdiction to enter the contempt order.

■ Relator contends the claim for child support arrearage is barred by the entry of a consent decree in the Circuit Court of Prince Georges County, Maryland, on January 6, 1987. Relator claims this order was entered as the result of an enforcement proceeding initiated under the Uniform Reciprocal Enforcement of Support Act (URESA), Tex.Fam.Code Ann. §§ 21.01–21.43 (Vernon Supp.1991). He argues that, because the Maryland order reduced his monthly child support payments, the trial court's order of contempt is void. This contention is without merit.

The original divorce decree ordered relator to pay child support in the amount of $1800 per month. The Maryland order reduced the child support payments to $300 per month. In the order holding respondent in contempt, the trial court found relator had violated the terms of both the divorce decree *and* the Maryland consent decree, by "failing to timely make periodic payments of child support as ordered." The court then adjudged relator in contempt "for each separate violation of the

order of this Court, through Jan. 5, 1987, and since Jan. 5, 1987 for violation of the requirements of *either* order above mentioned." (Emphasis added.)

It is clear from the specific language of the contempt order that the trial court was aware the Maryland order reduced relator's child support obligations. It is equally evident the trial court found relator had violated the provisions of that order, as well as the divorce decree, and held him in contempt for both violations.

Relator next claims the order of contempt is void because he does not have the present financial ability to discharge the contempt. He argues, in effect, the evidence produced before the trial court, as well as the trial court's findings thereon, conclusively established his inability to purge himself from the contempt.

■ In order to establish inability to discharge the contempt, the relator must prove (1) he lacked the ability to provide support in the amount ordered, (2) he does not have personal or real property that can be sold, mortgaged, or otherwise pledged to raise the needed funds, (3) he has tried to borrow the money from financial institutions such as banks, credit unions, and loan companies, and (4) he knows of no other source, including relatives, from where the money could be obtained. TEX.FAM.CODE ANN. § 14.40(g) (Vernon Supp.1991). *See also Ex parte Hennig*, 559 S.W.2d 401, 402–03 (Tex.Civ.App.—Dallas 1979, orig. proceeding).

■ At the hearing on relator's current financial condition, he testified he was unemployed and had been unemployed since December 15, 1989. He had been laid off by his employer and has been actively seeking other employment. He has no personal or real property that can be sold, mortgaged, or used as collateral to raise the funds to pay the child support. He has attempted to borrow money from financial institutions to pay his child support, but has been refused because he does not have

any property that can be used as collateral and he does not have good credit. He does not own a car or have one to use. He is renting the house in which he resides. He has asked his brother, his sister, and his mother to lend him money, but they refused.

Relator's wife is a legal secretary, and she is paying relator's legal fees in the amount of $2,500. Relator never asked his wife to loan him the money to pay the arrearage. On cross-examination, relator further admitted that, as long as the amount of arrearage was $30,000, he did not intend to pay a penny of the amount due.

The trial court found that the relator was unemployed, through no fault of his own, and that he had no present ability to discharge the coercive contempt imposed by the court. However, the court also found that the relator had "failed to produce credible testimony that he's exhausted all sources from which he can borrow, to-wit: he has not even requested his wife or other relatives to borrow specifically to pay any amounts of child support."[1]

Although relator argues to the contrary, we conclude, under the circumstances, that relator's wife was a potential lender. Relator has not met his burden of conclusively proving his present inability to pay the child support arrearage, because he did not establish he had requested a loan from his wife and been denied.

The habeas corpus relief requested by relator is denied, and he is remanded to the custody of the Sheriff of Harris County.

---

1. We note from a review of the statement of facts from the hearing, that the trial court's statement is not entirely correct. The record reflects that while relator did not ask his wife to loan him the money, he did ask other relatives—his brother, sister and mother—for the money.