**In the Interest of R.R.F. and J.F., Minor Children.**

**No. 13–91–673–CV.**

Court of Appeals of Texas, Corpus Christi.

Dec. 10, 1992.

Rehearing Overruled Jan. 14, 1993.

C.L. Wiginton, Karnes City, for appellant.

Walter R. Long, Jr., Bastrop, Steven G. Paulsgrove, County Atty., Goliad, for appellee.

Before NYE, C.J., and DORSEY and GILBERTO HINOJOSA, JJ.

## OPINION

DORSEY, Justice.

This case involves the termination of parental rights of the natural parents of two children. The father, Luis Flores, appeals, challenging the trial court's findings by five points of error. We affirm.

Bridgett Labus, the 62–year–old great-grandmother of the minor children and movant below, has been their managing conservator since August, 1986. The children, a girl and a boy, are now eleven and eight years old. Labus filed her original petition for termination and adoption of the children in April, 1991. She alleged that

the termination of both Flores's rights and those of the children's mother, Melissa Reena Flores, would be in the best interest of the children, as required by the Family Code. *See* TEX.FAM.CODE ANN. § 15.02(2) (Vernon Supp.1992). Labus pleaded three supplemental grounds for the termination in conjunction with the best interest of the children. These grounds, as enumerated in the Family Code, were:

§ 15.02(1)(D) the Floreses knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangers the physical or emotional well-being of the children;

§ 15.02(1)(E) they engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangers the physical well-being of the children;

and

§ 15.02(1)(F) they failed to support the children in accordance with their ability during a period of one year ending within six months of the date of the filing of this petition.

A termination hearing was conducted on September 16, 1991. The mother did not appear at the hearing, but the father, appellant here, did.

Bridgett Labus was the only witness to testify. At the conclusion of her testimony she rested her case, and Flores rested without presenting evidence. On the basis of Labus's testimony and a Health, Social, Educational, and Genetic History Report introduced into evidence, the trial court found that both parents provided an unstable existence and failed to support the children, and that the best interests of the children would be served if the parent-child relationships were terminated.

By five points of error, Luis Flores appeals the trial court's judgment. Flores essentially contends that there was no evidence or insufficient evidence to support the trial court's findings and judgment. Our Texas Supreme Court has made clear that the involuntary termination of paren-

tal rights involves fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex.1985) (quoting *In re G.M.*, 596 S.W.2d 846, 846 (Tex.1980)). Moreover, a termination decree is complete, final, irrevocable, and "divests for all time that natural right as well as all legal rights, privileges, duties and powers." *Holick*, 685 S.W.2d at 20.

■ As a result, the evidentiary standard to be applied in parental termination cases is a clear and convincing evidence test[1], that is, that degree of proof that will produce in the mind of the trier of fact a firm conviction or belief that the allegations sought to be established are true. *Garza v. Dept. of Human Servs.*, 794 S.W.2d 521, 523 (Tex.App.—Corpus Christi 1990, no writ); TEX.FAM.CODE ANN. § 11.-15(c) (Vernon 1986).

■ By point of error one, Flores complains of the sufficiency of the evidence to support the trial court's finding that he failed to support the children in accordance with his ability. TEX.FAM.CODE ANN. § 15.-02(1)(F). "Constitutional precautions ... demand evidence that can produce a firm conviction that the father failed to support the child in accordance with his ability during the time period alleged." *Jimenez ex rel. Little v. Garza*, 787 S.W.2d 601, 604 (Tex.App.—El Paso 1990, no writ). Flores emphasizes there was no evidence of his ability to support the children, such as his earnings.

At the hearing, Labus testified that when she was appointed managing conservator of the children in August, 1986, the court ordered Flores and the children's mother to pay Labus a total of $100 per month for support of the children. Labus testified that she has never received that money from Flores. Labus stated that she knew the Department of Human Services did not receive any money from Flores for the support of the children while they were in foster homes.

---

**1.** *Santosky v. Kramer*, 455 U.S. 745, 746–48, 102 S.Ct. 1388, 1391–93, 71 L.Ed.2d 599 (1982); TEX. FAM.CODE ANN. § 11.15(b) (Vernon 1986).

The Family Code requires a showing of failure to pay *in accordance with one's ability. See Jimenez,* 787 S.W.2d at 603–604; *Wetzel v. Wetzel,* 715 S.W.2d 387 (Tex.App.—Dallas 1986, no writ). When the trial court establishes the amount of child support to be paid by a parent, the court must consider the ability to contribute to the child's support. TEX.FAM.CODE ANN. § 14.05(a) (Vernon 1986). The child support order includes within it an implicit finding that the obligor has the means to pay the amount ordered.

■ In a contempt proceeding, the one defending the failure to pay support as ordered must raise the inability to pay as an affirmative defense. TEX.FAM.CODE ANN. § 14.40(g) (Vernon Supp.1992). The affirmative defense does not arise unless evidence is admitted to support it. TEX. FAM.CODE ANN. § 14.40(h) (Vernon Supp. 1992). Prior to the promulgation of §§ 14.-40(g) & (h), Texas Courts required the non-paying parent to conclusively prove by a preponderance of the evidence his or her inability to pay the support ordered to avoid being held in contempt of court. *Ex parte Jimenez,* 737 S.W.2d 358, 360 (Tex. App.—San Antonio 1987, no writ) *(habeas corpus* proceeding); *Ex parte Rine,* 603 S.W.2d 268, 270 (Tex.Civ.App.—Waco 1980, no writ) *(habeas corpus* proceeding); *Ex parte Hennig,* 559 S.W.2d 401, 402–403 (Tex.Civ.App.—Dallas 1977, no writ). Family Code §§ 14.40(g) & (h) codified the long-standing rule in 1987. *See Ex parte Johns,* 807 S.W.2d 768, 772 (Tex.App.—Dallas 1991, no writ); *Ex parte Bregenzer,* 802 S.W.2d 884, 887 (Tex.App.—Houston [1st Dist.] 1991, no writ).

■ Actions for termination are like contempt proceedings when the failure to support as ordered is made a basis of the action. In either situation, the rights of the non-paying parent are in jeopardy, either by incarceration or by loss of parental rights. We hold that in a termination proceeding, the inability to pay support under a valid order is an affirmative defense that must be raised by the party defending the allegation of failure to pay support.

Labus testified to the existence of a valid child support order entered against Flores for the benefit of the children at issue here. If he wished to defend his failure to pay support on the basis of his inability to do so, Flores was required to raise the affirmative defense by presenting evidence. Flores did not testify on his own behalf, nor did he bring forth evidence to raise the issue, as was his burden, that he was unable to pay the support ordered in 1986. Point one is overruled.

■ By points two and three, Flores complains of the sufficiency of the evidence to support the trial court's order terminating his parental rights on the grounds that he caused the children to live in an unstable environment, *i.e.,* he knowingly placed, or allowed the children to remain in, dangerous conditions or surroundings, and that he engaged in conduct or knowingly placed the children with people who engaged in conduct that endangered the children. TEX. FAM.CODE ANN. §§ 15.02(1)(D) & (E).

The uncontroverted evidence is that the children were repeatedly shuttled between foster homes, their mother's custody, and the homes of relatives. A Health, Social, Educational and Genetic Report presented to the trial court states that when the daughter was about three years old and in her mother's custody, she was sexually assaulted either by her mother's new boyfriend or by the man's friend. The child contracted a severe case of gonorrhea as a result. This incident resulted in court proceedings to adjudicate custody of the girl. Luis Flores did not appear at the hearing. When the son was fourteen months old and living with his sister in a foster home, the son fell down a flight of stairs, sustaining a concussion. A medical report showed that the boy had alcohol in his system. The children were removed from that foster home and placed in three or four more before being placed with Labus in 1986. The evidence shows that the children were the subjects of numerous custody hearings; Luis Flores neglected to participate in any of them. Until Labus became managing conservator in 1986, Flores accepted no responsibility for his children, and there is

evidence that he may have allowed his children to remain with dangerous individuals and in dangerous conditions.

Texas case law makes clear that in a termination suit, "acts done in the distant past, without showing a present or future danger to a child, cannot be sufficient to terminate parental rights." *Wetzel*, 715 S.W.2d at 391; *Carter v. Dallas County Child Welfare Unit*, 532 S.W.2d 140, 142 (Tex.Civ.App.—Dallas 1975, no writ). The predecessor to Family Code section 15.02 is TEX.REV.CIV.STAT.ANN. art. 2330 (Vernon 1971), "Dependent or Neglected Child." That statute contemplates situations in which children may be adopted by third parties because they are dependent upon the public for support, are homeless or abandoned, or because they do not have proper parental care or guardianship. The statute was construed by the Texas Supreme Court in *Hendricks v. Curry*, 401 S.W.2d 796, 800 (Tex.1966). The Court held, "These provisions do not contemplate that an adjudication may be based solely upon conditions which existed in the distant past but no longer exist." *Id.* This decision has been followed since the Family Code was enacted. *See Johnson v. Jefferson County Child Welfare Unit*, 557 S.W.2d 569, 571 (Tex.Civ.App.—Beaumont 1977, no writ) (applying that construction to find lack of evidence to terminate based on conduct that endangered the child under § 15.02(1)(E); one incident at issue occurred almost three years before).

Allegations of Flores's harmful conduct towards his children are based on actions taken by him before August, 1986. Due to the remoteness in time of these actions, and the lack of proof of Flores's future threat to the children, Labus failed to put forth evidence of a clear and convincing nature sufficient to terminate Flores's parental rights altogether based on an unstable environment and §§ 15.02(1)(D) & (E). Flores has had little or no contact with the children for the past six years. Points two and three are sustained.

■ By point of error four, Flores asserts that insufficient evidence existed to support the termination of his parental rights based on the best interests of his children. *See* TEX.FAM.CODE ANN. § 15.-02(2). The Texas Supreme Court has denoted the factors to be considered when determining the best interests of the children: (1) the desires of the children; (2) the emotional and physical needs of the children now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist that individual to promote the best interests of the children; (6) the plans the individual seeking custody has for the children; (7) the stability of the home; (8) the acts or omissions of the parent that may show the existing parent-child relationship is improper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex.1976); *In the Interest of S.H.A.*, 728 S.W.2d 73, 89 (Tex. App.—Dallas 1987, no writ). This list is not all-inclusive.

Labus testified at the hearing that Flores has called to talk to his daughter twice that Labus can remember, the first time on the child's birthday. The girl did not want to talk to her father. Flores also asked to see his daughter, but the girl refused. She also does not want to keep Flores's picture. Labus stated that the girl is afraid of her father.

In addition, Labus testified that when she told the girl she was attempting to adopt her and her brother, but that she did not know if she would be able to, the child became very upset. She has been unruly at school and at home for the several weeks preceding the termination proceedings. The children told Labus they did not want to go with their father, and they did not want to go to school on the day of the hearing because they were afraid someone would take them away. The children become upset, she said, if they think they will have to go away or that she is going to leave them. The children do not like Labus to go anywhere without them.

It has been at least four years since Flores has asked Labus about the children, either in person, in writing, or by tele-

phone. The children never ask about their parents and seem to show little interest in who they are. The boy does not know his father at all, having been born after his parents' final separation. Moreover, the children wish to have their last names changed to Labus; the daughter refuses to use her real surname, Flores.

Labus testified at the termination hearing that when she first got conservatorship of the children in 1986, they were rebellious and apprehensive that they might be moved to yet another foster home or to another relative. Since that time, the children have settled down. The children are now in fourth and second grade, respectively, and are doing well. Labus disciplines the children, and they go to church. Labus said she had both children baptized. Labus has two daughters and a son who visit her and the children regularly, and they all take the children out to movies, baseball games, and the like. She stated that she has a very good relationship with the children, and that the children are very happy with her.

In addition, Labus testified that she owns a significant amount of property and generates enough income from oil interests and leases and rental property to support herself and the children. Labus provides for all of their medical care. Finally, Labus testified that the children's lives have stabilized in the five years they have lived with her, that it would be harmful to them to grow up with their father, and that it would be in their best interest if the parents' rights were terminated and she were allowed to adopt them.

This evidence, taken together, supports the trial court's finding that it would be in the best interests of the children if Flores's parental rights were terminated. Point of error four is overruled.

By point of error five, Flores maintains that the trial court erred by terminating his parental rights solely on best interests grounds. To terminate parental rights, Family Code sections 15.02(1) and 15.02(2) must both be met. There being sufficient evidence of Flores's failure to support his children in accordance with his ability to do so, an enumerated condition for termination under § 15.02(1), point of error five is overruled.

The judgment of the trial court is AFFIRMED.