

# IN THE
# TENTH COURT OF APPEALS

### No. 10-08-00341-CV

## IN THE INTEREST OF N.A.F., A CHILD,

**From the County Court at Law No. 2
Brazos County, Texas
Trial Court No. 07-002977-CV-CCL2**

## O P I N I O N

Molly, the mother of N.A.F., filed a petition to terminate the parental rights of N.A.F.'s father, Robert, asserting two statutory grounds. After a bench trial at which Robert did not appear,[1] the trial court terminated Robert's parental rights on the sole ground that he failed to support N.A.F. in accordance with his ability. We will reverse the trial court's termination order.

The natural right that exists between parents and their children is one of constitutional dimension. *In re J.W.T.*, 872 S.W.2d 189, 194-95 (Tex. 1994). A parent's right to "the companionship, care, custody and management" of his or her children is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*,

---

[1] This is a restricted appeal. *See* TEX. R. APP. P. 26.1, 30. Robert did not receive timely notice of the termination order, but his notice of appeal was filed within six months of the order.

455 U.S. 745, 758-59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982) (quoting *Stanley v. Illinois,* 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972)). Therefore, in a case terminating parental rights, the proceedings are strictly scrutinized, and the involuntary termination statutes are strictly construed in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).

Termination of parental rights is a drastic remedy and is of such weight and gravity that due process requires the petitioner to justify termination by "clear and convincing evidence." *Spangler v. Texas Dept. of Prot. & Reg. Servs.,* 962 S.W.2d 253, 256 (Tex. App.—Waco 1998, no pet.). This standard is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Texas Family Code, the petitioner must establish by clear and convincing evidence two elements: (1) one or more acts or omissions enumerated under subsection (1) of section 161.001; and (2) that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001 (Vernon 2008); *Swate v. Swate,* 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied). The factfinder must find that both elements are established by clear and convincing evidence, and proof of one element does not relieve the petitioner of the burden of proving the other. *Holley v. Adams,* 544 S.W.2d 367, 370 (Tex. 1976); *Swate,* 72 S.W.3d at 766.

Raising three issues, Robert asserts that the evidence is legally and factually insufficient to support termination. Robert's third issue asserts that the trial court erred

in terminating his parental rights because the evidence is legally insufficient to establish his ability to pay child support for each month that he failed to pay child support during one year ending within six months of the filing of the petition seeking termination.

A legal sufficiency review in termination cases must take into consideration whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the matter on which the petitioner bears the burden of proof. *In re J.F.C.,* 96 S.W.3d 256, 264-68 (Tex. 2002).

> In a legal sufficiency review, a court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible.

*Id.* at 266.

Subsection 161.001(1)(F) authorizes termination of parental rights of a parent who fails to support the child in accordance with the parent's ability during a period of one year ending within six months of the date of the filing of the petition for termination. TEX. FAM. CODE ANN. § 161.001(1)(F). The one-year period means twelve consecutive months, and there must be clear and convincing proof that the parent had the ability to pay support during each month of the twelve-month period. *In re E.M.E.,* 234 S.W.3d 71, 72 (Tex. App.—El Paso 2007, no pet.); *In re T.B.D.,* 223 S.W.3d 515, 518

(Tex. App.—Amarillo 2006, no pet.); *In re D.S.P.,* 210 S.W.3d 776, 779 (Tex. App.—Corpus Christi 2006, no pet.). The burden of proof is on the person seeking termination to prove by clear and convincing evidence that the other had the ability to pay during each of the months. *Morris v. Barnes,* 2004 WL 792201, at *3 (Tex. App.—Austin April 15, 2004, no pet.) (mem. op.) (citing *In re Z.W.C.,* 856 S.W.2d 281, 283 (Tex. App.—Fort Worth 1993, no writ)).

Molly's petition was filed on November 15, 2007, and the bench trial, which appears to have lasted less than ten minutes, took place in May 2008. Molly's burden was to present clear and convincing evidence that Robert had the ability to pay child support for twelve consecutive months within the eighteen-month period ending within six months of November 15, 2007. *See E.M.E.,* 234 S.W.3d at 72; *Z.W.C.,* 856 S.W.2d at 283. Robert did not attend the trial—according to Molly, the trial's only witness, he was in jail at the time for failure to pay child support. The order for Robert to pay child support is not in the record, nor is the amount he was to pay.

Molly testified that she sought child support in 2003 through the Attorney General, she had not received a full child-support payment in "almost two years," and she had last received some payment in July 2007. She did not testify about Robert's ability to pay or his employment history, nor did she testify when Robert's incarceration began. We thus cannot ascertain if he was employed or incarcerated in any of the months in which he was alleged to have not paid child support. Molly's brief admits: "It is undisputed that Molly did not offer testimony regarding Appellant's ability to pay for the twelve months in question."

The trial court found that Robert had the ability to pay in the relevant time period. Robert says there is no evidence to support that finding. Molly, asserting that the child-support order includes with it an implied finding that Robert had the ability to pay, points to a 1999 opinion where we stated as much in a termination case:

> When the trial court establishes the amount of child support to be paid by a parent, the court must consider the ability to contribute to the child's support. *In the Interest of R.R.F.*, 846 S.W.2d 65, 68 (Tex. App.—Corpus Christi 1992, writ denied). The child support order includes within it an implied finding that the obligor has the means or ability to pay the amount ordered. *Id.*

*In re J.M.T.*, 39 S.W.3d 234, 239 (Tex. App.—Waco 1999, no pet.), *disapproved on other grounds by J.F.C.*, 96 S.W.3d at 267 & n.39. But the Corpus Christi court has since overruled its holding in *R.R.F.*:

> Our application of law in *R.R.F.*, as it relates to section 161.001(1)(F), has been both criticized and utilized approvingly. The basis for criticism largely stems from our analogy between a termination proceeding and a contempt proceeding for failure to pay child support. In reviewing our holding in *R.R.F.* and its subsequent treatment, we find the criticism to be persuasive.
>
> The problem with the analogy begins with the fact that the proceedings are governed by independent statutes that impose different burdens on the parties involved. In a contempt proceeding, the obligee bears the burden of proving that child support was due and not paid. Once the obligee has met that burden, the obligor may plead the affirmative defense of inability to provide support, which the obligor then has the burden to prove by a preponderance of the evidence. This is in contrast to a termination proceeding governed by section 161.001, which (1) is devoid of any language regarding affirmative defenses, (2) includes as an element of termination the failure to pay in accordance with ability, and (3) demands that each finding required for termination of the parent-child relationship be based on clear and convincing evidence. In addition to these statutory distinctions, we also note that the proceedings differ in that "the consequences of termination are permanent, unlike the consequences of modification and enforcement proceedings, which makes

an analogy between the two fairly weak. One can purge contempt by payment; once termination is final, there is no recourse."

In light of the above reasoning, we conclude that our holding in *R.R.F.*, that "in a termination proceeding, the inability to pay support under a valid order is an affirmative defense that must be raised by the party defending the allegation of failure to pay support," is in error. *Furthermore, while a child support order does contain an implied finding that the obligor has the ability to pay the support, we conclude that this matter should not be afforded any relevance in a termination proceeding involving section 161.001(1)(F).* Requiring a parent at risk of losing her parental rights to present evidence of her inability to pay for the purpose of either (1) asserting an affirmative defense or (2) overcoming a child support order's implied finding of ability to pay, wrongfully shifts the burden of proving ability to pay to the parent and excuses the movant in the termination proceeding from the burden of proving that the parent failed to support in accordance with the parent's ability. Furthermore, an application of law that allows for such a result seemingly runs afoul of rulings from the Texas Supreme Court, which has ruled that "involuntary termination statutes are strictly construed in favor of the parent." Accordingly, we hereby overrule the reasoning and holdings in *R.R.F.* that have been applicable to this discussion.

*D.S.P.,* 210 S.W.3d at 780-81 (footnotes and citations omitted) (emphasis added).

At least two other courts have reached the same conclusion as the Corpus Christi court in *D.S.P. See E.M.E.,* 234 S.W.3d at 73-74; *Morris,* 2004 WL 792201, at *4; *see also* James W. Paulsen, *Family Law: Parent and Child,* 47 SMU L. REV. 1197, 1217-19 (1994) (criticizing *R.R.F.*). *But see In re J.M.M.,* 80 S.W.3d 232, 250 (Tex. App.—Fort Worth 2002, pet. denied) (applying *R.R.F.*), *disapproved on other grounds by J.F.C.,* 96 S.W.3d at 267 & n.39.

Because of the Corpus Christi court's disavowal of *R.R.F.*, we likewise disavow our reliance on *R.R.F.* in *J.M.T.* While it is true that a child-support order contains an implied finding that the obligor was able to pay the ordered support, that "support

order only contains an implied finding as of the time the order is entered; it cannot predict the future." Paulsen, 47 SMU L. REV. at 1219. Thus, a child-support order is no evidence of Robert's ability to pay support for the twelve consecutive months required by subsection 161.001(1)(F). *See D.S.P.*, 210 S.W.3d at 781-82.

Accordingly, we hold that the evidence was legally insufficient for a reasonable factfinder to form a "firm belief or conviction" that Robert failed to support N.A.F. in accordance with his ability for twelve consecutive months as defined, and we sustain Robert's third issue. We further hold that the trial court erred in terminating Robert's parental rights on the ground that he violated subsection 161.001(1)(F). We need not address Robert's other two issues. TEX. R. APP. P. 47.1.

We reverse the trial court's termination of Robert's parental rights. In the interest of justice, we remand the cause for another trial. TEX. R. APP. P. 43.3(b).


                                           REX D. DAVIS
                                           Justice

Before Chief Justice Gray,
      Justice Reyna, and
      Justice Davis
      (Chief Justice Gray dissents from the judgment. A separate opinion will not issue.)
Reversed and remanded
Opinion delivered and filed February 11, 2009
[CV06]