

# NUMBER 13-20-00258-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF A.P., H.L., B.L., AND G.Y., CHILDREN

**On appeal from the County Court at Law
of Aransas County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes
Memorandum Opinion by Chief Justice Contreras**

The trial court terminated the parental rights of appellant J.L. (Father) to his daughters A.P., H.L., and B.L.[1] By four issues, Father argues there was legally and factually insufficient evidence to support termination under any of the four statutory

---

[1] To protect the identity of the children, we refer to those involved in the case by aliases, as necessary. *See* TEX. R. APP. P. 9.8(b). At the time of trial, A.P., H.L., and B.L. were fifteen, twelve, and eleven years old, respectively.

grounds for termination found by the trial court. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O). We affirm as modified.

## I. BACKGROUND

On July 24, 2019, the Department of Family and Protective Services (the Department) filed an original petition for conservatorship of A.P., H.L., B.L., and G.Y. and for the termination of the parent-child relationship to A.P.-L. (Mother) and their respective fathers. Appellant is the father of A.P., H.L., and B.L.

In its petition, the Department alleged that termination of Father's parental rights was proper under seventeen separate statutory grounds and that termination was in the best interest of the children. *See id.* § 161.002(b)(1)(A)–(Q), (2). On May 19, 2020, the suit was tried to the bench. The court heard testimony from the initial caseworker for the Department (Mandy Lopez), the caseworker for the Department at the time of trial (Julia Escamilla), the children's caregiver and prospective adoptive parent (C.W.), Father, and the children's guardian ad litem (Rebecca Roark).

Lopez testified that the Department became involved after receiving an allegation in June 2019 that Mother was using heroin while pregnant and "engaging in domestic violence with her alleged boyfriend at the time Luis . . . ." According to Lopez, she interviewed the children, and A.P. told her that the children found "syringes in the home they were staying in with" Mother, as well as "pills." During its investigation, the Department discovered that the children were residing and being cared for by C.W.—a long-time friend of Mother to whom Mother had granted "a note for power of attorney for the children"—but were "staying the weekend with [Mother] or the couple of days or whatever it was" when the events leading to the Department's investigation took place.

2

Lopez testified that Mother was incarcerated at the time of the investigation and refused to talk to Lopez and that she did not make contact with Father because he was incarcerated as well.[2] At that point, the Department began to prepare for the removal of the children.

Escamilla testified that she was the caseworker for the Department at the time of trial and that she had communicated with Father through letters by mail. She explained that, according to the website for the Texas Department of Criminal Justice, Father's projected release date is September 29, 2024, and his parole was denied on May 2, 2020. Escamilla confirmed that Father received a service plan and that Father was unable to comply with the drug testing requirements, as well as other educational requirements, until he was released. According to Escamilla, Father would send letters to the children "probably every other month or every few months[,] mainly on holidays and birthdays, things like that." Escamilla testified that, during the pendency of the case, the children had been placed back with C.W., who had passed a home study. Escamilla explained C.W. "has been caring for [the children] since they were babies"; C.W. "is able to meet all of their needs [and] follows all of our recommendations"; the children "are very well bonded to" C.W.; C.W. "is very protective" of the children; and C.W. "is currently working with the Department to become a foster home because she wants to adopt all four girls." She explained that the Department's concern was that the children "have not been provided a stable drug-free safe home environment their entire lives" and that C.W. is able to provide a safe, stable, and loving home environment.

---

[2] It is unclear how long Father has been incarcerated. Lopez stated that she "did send out a letter to the address where he was incarcerated at" but did not receive a response. Father testified that he "first heard about [the proceedings] when [he] got a letter that was actually sent to [the wrong state jail] so [he] did not hear about what was going on until after a couple of months after the fact."

C.W. testified she has had the children "since [A.P.] was born." C.W. was asked, "Were there ever any times that you had the children that [Mother] or either of the fathers had the children for an extended period of time?", and she answered "No." C.W. elaborated that "the longest [any of the parents] kept [the children] was when [Mother] took them two summers ago . . . for three months." According to C.W., Mother and Father "were both on drugs a lot when [A.P.] was little" and "had a lot of altercations; physical, verbal, all kinds" when all the girls were "little." When these altercations occurred in the presence of the children, C.W. and the children "would leave or we would go in another room or we would—we would just get in the car and go." C.W. explained that Father left when B.L., the youngest of his three children, was eight months old. In the decade that followed, according to C.W., Father "probably [came] down twice to visit them and both times he ended up staying with [Mother], hanging out with [Mother], barely spending time with them." C.W. testified that the children do not hear from Father "for any reason" but conceded that the children had received "the Christmas cards and a birthday card that was transmitted by [Father] since the case started."

Father testified that he loved the children, did not want his parental rights terminated, and believed granting permanent managing conservatorship of the children to C.W. would be in their best interest. On cross examination, Father conceded that he has "an extensive criminal history that has spanned the lifetime of all three of [the] children" and that his criminal activity has kept him "from being a supportive father." Father stated he is incarcerated for "possession of one to four with intent" and believes his expected release date is 2031. Father also explained that he had "tried on multiple

4

occasions to be in [the children's] life but you hit a brick wall every time. [Mother] would always want to fight and argue about that."

Roark recommended that C.W. receive custody of the children and later adopt them. She explained C.W. "has shown a great deal of compassion and care for these girls and has done everything in her power to provide them with their needs." Finally, the court heard from the children, and they testified that they did not know Father, did not want to live with him, and wanted to stay with C.W.

The trial court terminated Father's parental rights to all three children, finding that termination was proper under four statutory grounds and in the children's best interest.[3] *See id.* § 161.001(b)(1)(D), (E), (N), (O), (2). This appeal followed.

## II. DISCUSSION

Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.); *see Stantosky v. Kramer*, 455 U.S. 745, 753 (1982). "Termination of parental rights, the total and irrevocable dissolution of the parent-child relationship, constitutes the 'death penalty' of civil cases." *In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring). Accordingly, termination proceedings must be strictly scrutinized. *Id.* at 112. In such cases, due process requires application of the "clear and convincing" standard of proof. *Id.* (citing *Stantosky*, 455 U.S. at 769; *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002)). This intermediate standard falls between the

---

[3] The trial court also terminated Mother's parental rights to all four children as well as G.Y.'s father's parental rights.

preponderance of the evidence standard of civil proceedings and the beyond a reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re L.J.N.*, 329 S.W.3d at 671. "'Clear and convincing evidence' means a 'measure of degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *In re N.G.*, 577 S.W.3d 230, 235 (Tex. 2019) (per curiam) (quoting TEX. FAM. CODE ANN. § 101.007); *see In re K.M.L.*, 443 S.W.3d at 112–13 ("In cases requiring clear and convincing evidence, even evidence that does more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true."). "When reviewing a finding made by clear and convincing evidence, we determine whether the evidence is sufficient to make the existence of a fact highly probable, not whether the evidence supporting the finding is sufficient to make the existence of the fact more probable than not, as in ordinary civil cases." *In re D.M.*, 58 S.W.3d 801, 808 (Tex. App.—Fort Worth 2001, no pet.).

The trial court may order the termination of the parent-child relationship if the court finds by clear and convincing evidence that: (1) the parent committed an act or omission described in family code subsection 161.001(b)(1) and (2) termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re N.G.*, 577 S.W.3d at 232. "To affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground." *In re N.G.*, 577 S.W.3d at 232; *see* TEX. FAM. CODE ANN. § 161.001(b). However, we must always review any sufficiency challenge on appeal to a termination under subsection (D) and (E). *See In re N.G.*, 577 S.W.3d at

6

235 ("When a parent has presented the issue on appeal, an appellate court that denies review of a section 161.001(b)(1)(D) or (E) finding deprives the parent of a meaningful appeal and eliminates the parent's only chance for review of a finding that will be binding as to parental rights to other children.").

In conducting a legal-sufficiency review, the reviewing court cannot ignore undisputed evidence contrary to the finding, but it must otherwise assume the factfinder resolved disputed facts in favor of the finding. *In re A.C.*, 560 S.W.3d 624, 630–31 (Tex. 2018). Evidence is legally sufficient if, viewing all the evidence in the light most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true. *Id.* at 631.

In a factual-sufficiency review, the appellate court must consider whether disputed evidence is such that a reasonable fact finder could not have resolved it in favor of the finding. *Id.* Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true. *Id.*

## A.   Termination under § 161.001(b)(1)(D)—Endangering Environment

By his first issue, Father argues that there was legally and factually insufficient evidence to support the termination of his parental rights under § 161.001(b)(1)(D).[4]

---

[4] The Department states in its appellate brief:

> Because the evidence is legally and factually sufficient to support the trial court's determination under subsections (E) and (N), and because only one statutory predicate ground is necessary to support termination of John's parental rights, his challenges to the trial court's subsections (D) and (O) findings should be overruled. *In re A.V. and J.V.*, 113 S.W.3d 355, 361 (Tex. 2003) (only one statutory predicate ground is necessary to support termination of parental rights when there is also a finding of best interest). As such, the Department will not address those issues.

7

A parent's rights to his or her child may be terminated if the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(D). "Endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *In re V.A.*, 589 S.W.3d 317, 328 (Tex. App.— Houston [14th Dist.] 2020, no pet. h.); *see In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam). "Knowingly" requires that "the parent be aware of but disregard" the potentially endangering environment at issue. *See In re E.R.W.*, 528 S.W.3d 251, 264 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

Endangerment under subsection (D) focuses on evidence related to the child's environment. *In re V.A.*, 598 S.W.3d at 328; *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.— Houston [14th Dist.] 2014, pet. denied). The relevant time frame to determine whether

However, we note that the Texas Supreme Court has made it clear that the sufficiency of the evidence supporting termination under subsections (D) or (E) must always be reviewed, regardless of whether the evidence supporting termination under another statutory ground is sufficient. *See In re L.G.*, 596 S.W.3d 778, 781 (Tex. 2020) (per curiam); *In re N.G.*, 577 S.W.3d 230, 235–26 (Tex. 2019) (per curiam). Accordingly, though we find sufficient evidence to support a finding under subsection (E), as discussed below, we also address the sufficiency of the evidence supporting the subsection (D) finding out of an abundance of caution. *See In re L.W.*, No. 06-20-00012-CV, __ S.W.3d __, __, 2020 WL 4680284, at *8 (Tex. App.—Texarkana Aug. 13, 2020, no pet.); *see also In re N.N.M.*, No. 04-19-00369-CV, 2020 WL 4808704, at *5–7 (Tex. App.—San Antonio Aug. 19, 2020, no pet. h.) (mem. op.); *In re S.T.*, No. 11-19-00363-CV, 2020 WL 2610393, at *3–4 (Tex. App.—Eastland May 18, 2020, pet. denied) (mem. op.); *In re J.L.V.*, No. 09-19-00316-CV, 2020 WL 1161098, at *10 (Tex. App.—Beaumont Mar. 11, 2020, pet. denied) (mem. op.); *In re D.C.*, No. 05-19-01217-CV, 2020 WL 1042692, at *10 (Tex. App.—Dallas Mar. 4, 2020, pet. denied); *In re M.B.*, No. 13-19-00411-CV, 2019 WL 5997509, at *6 (Tex. App.—Corpus Christi–Edinburg Nov. 14, 2019, no pet.) (mem. op.); *but see C.W. v. Tex. Dep't of Family & Protective Servs.*, No. 03-19-00654-CV, 2020 WL 828673, at *2 (Tex. App.—Austin Feb. 20, 2020, no pet.) (mem. op.) ("However, we need not review Father's challenge under Subsection (D) because the potential collateral consequences are triggered separately by the Subsection (E) portion of the trial court's judgment, which he does not challenge."); *In re K.M.*, No. 01-19-00285-CV, 2019 WL 3949483, at *8 (Tex. App.—Houston [1st Dist.] Aug. 22, 2019, pet. denied) (mem. op.) ("Because we have determined that sufficient evidence supports termination under [(E), a] predicate that could underlie a future subsection (M) termination, we see no basis for addressing Father's first issue, in which he contends the evidence is legally and factually insufficient to support the trial court's finding under subsection (D).").

8

there is clear and convincing evidence of endangerment is before the child was removed. *In re I.D.G.*, 579 S.W.3d 842, 850 (Tex. App.—El Paso 2019, pet. denied); *Ybarra v. Tex. Dep't of Human Servs.*, 869 S.W.2d 574, 577 (Tex. App.—Corpus Christi–Edinburg 1993, no writ). It is not necessary, however, that the Department show the child's environment directly threatened or injured the child. *See In re M.M.*, 584 S.W.3d 885, 889 (Tex. App.—Amarillo 2019, pet. denied). Further, termination under subsection (D) may be based on a single act or omission. *See id* at 889–90; *In re J.E.M.M.*, 532 S.W.3d 874, 884 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *In re E.M.*, 494 S.W.3d 209, 221–22 (Tex. App.—Waco 2015, pet. denied); *Jordan v. Dossey*, 325 S.W.3d 700, 721 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *see also In re L.S.*, No. 13-18-00632-CV, 2019 WL 1474521, at *7 (Tex. App.—Corpus Christi–Edinburg Apr. 4, 2019, pet. denied) (mem. op.).

The acceptability of living conditions and parental conduct in the home are subsumed in the endangerment analysis. *See In re V.A.*, 598 S.W.3d at 328; *In re J.E.M.M.*, 532 S.W.3d at 880–81; *In re J.D.*, 436 S.W.3d 105, 114 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Likewise, "inappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in the home is a part of the 'conditions or surroundings' of the child's home" under subsection (D). *In re M.D.M.*, 579 S.W.3d 744, 764 (Tex. App.—Houston [1st Dist.] 2019, no pet.).

We now turn to the evidence presented by the Department.

9

### 1. Driving With A.P. While Intoxicated

Here, Lopez testified that in 2006 the Department removed A.P.—the oldest of the three children—because Mother and Father were "extremely intoxicated driving with [A.P.] at four months old in the car." However, in a termination suit, acts done in the distant past, without showing a present or future danger to a child, cannot be sufficient to terminate parental rights. *In re C.V.L.*, 591 S.W.3d at 751; *In re R.R.F.*, 846 S.W.2d 65, 69 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied), *overruled in part on other grounds by In re D.S.P.*, 210 S.W.3d 776, 780–81 (Tex. App.—Corpus Christi–Edinburg 2006, no pet.); *Wetzel v. Wetzel*, 715 S.W.2d 387, 391 (Tex. App.—Dallas 1986, no writ); *Carter v. Dallas Cty. Child Welfare Unit*, 532 S.W.2d 140, 142 (Tex. App.—Dallas 1975, no writ). Here, there is no evidence that Father has used drugs or alcohol in the last ten years, that he might do so again in the future, or that he ever committed a similar act; the evidence in total provides that he once drove while intoxicated with A.P. fourteen years ago and that Father and Mother were both on a "lot" of "drugs" over ten years ago.

Thus, the question now becomes whether an act that was once sufficient to support termination can still be sufficient to support termination at a proceeding brought fourteen years later. We believe that, based on the scarce and vague facts of this case and the complete lack of evidence before the trial court of any future danger to A.P. by Father, the answer is "No." *See In re R.R.F.*, 846 S.W.2d at 69 (concluding evidence was insufficient to support termination under subsections (D) and (E) when Father's acts supporting termination were remote in time, there was lack of proof of Father's future threat to the children, and Father "had little or no contact with the children for the past six years"); *Wetzel*, 715 S.W.2d at 390–91 (concluding that the evidence was insufficient to

10

support termination under subsection (E) when Mother suffered from mental disorder and physically abused the children four years prior to the termination suit but no longer experienced mental illness and "there is no evidence that she now abuses the children or might do so in the future"); *see also In re G.A.L.*, No. 05-19-00844-CV, 2020 WL 582282, at *11 (Tex. App.—Dallas Feb. 6, 2020, no pet.) (mem. op.) ("So although Mother's offense is relevant to the danger issue, it is not strong evidence in light of the record."); *In re A.G.K.*, No. 04-16-00315-CV, 2016 WL 6775590, at * (Tex. App.—San Antonio Nov. 16, 2016, no pet.) (mem. op.) ("Because it is undisputed [Mother] has rehabilitated herself and remained drug free since 2009, and there is no evidence that drug use remains a current or future threat to the children, [Mother's] drug use in 2009 does not support" that termination was in the best interest of the child despite child being born "drug-addicted").[5]

Although the driving while intoxicated allegation occurred before the Department removed A.P. and sought termination, *see Ybarra*, 869 S.W.2d at 577, because of the remoteness in time of this action, and the lack of proof of Father's future threat to the A.P., the Department failed to put forth evidence of a clear and convincing nature legally sufficient to support a finding of termination of Father's parental rights to A.P. under subsection (D) based on this allegation. *See In re R.R.F.*, 846 S.W.2d at 69.

### 2. Remaining Evidence

The remaining evidence showed that C.W. cared for the children for most of their lives because Mother was incapable of doing so and because Father was not present.

---

[5] We note that a prosecution for driving while intoxicated must be brought within two years from the date of the commission of the offense, *see* TEX. CODE CRIM. PROC. ANN. art. 12.02(a); TEX. PENAL CODE ANN. § 49.04(a), (b), and that a prosecution for abandoning or endangering a child must be brought within five years from the date of the commission of the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 12.02(4)(D); TEX. PENAL CODE ANN. § 22.041(c).

11

While Father admitted to having a long criminal history that kept him from being present in the children's lives, the Department failed to elicit any details as to the type of offenses, the dates, whether the offenses occurred in the home, or how Father's criminal offenses knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D). Instead, the evidence established that Father only saw the children during brief periods of time over ten years ago and that the children were immediately removed from Father's presence by C.W. when Father and Mother had verbal and physical altercations.[6] *Cf. In re N.K.*, 399 S.W.3d at 330 ("It is illogical to reason that inappropriate, debauching, unlawful, or unnatural conduct of persons who live in the home of a child, or with whom a child is compelled to associate on a regular basis in his home, are not inherently a part of the conditions and surroundings of that place or home."). It is undisputed that C.W. provided the children with a safe and loving environment, and there is no evidence that Father prevented the children from the living environment provided by C.W. *See In re V.A.*, 598 S.W.3d at 329–30; *In re B.M.S.*, 581 S.W.3d 911, 917 (Tex. App.—El Paso 2019, pet. denied) ("Subsection D requires a showing that the environment in which the child is placed endangered the child's physical or emotional health."); *cf. In re R.S.-T.*, 522 S.W.3d 92, 109 (Tex. App.—San Antonio 2017, no pet.); *see also In re A.D.G.*, No. 04-19-00413-CV, 2019 WL 6499223, at *4–5 (Tex. App.—San Antonio Dec. 4, 2019, no pet.) (mem. op.); *In re D.M.K.*, No. 14-13-

---

[6] There is no evidence of the severity of the physical altercations between Father and Mother. Lopez testified that the Department received a report in 2007 for domestic violence and that Father obtained a protective order against Mother.

00230-CV, 2013 WL 5347392, at \*10 (Tex. App.—Houston [14th Dist.] Aug. 27, 2013, no pet.) (mem. op.).

Finally, we note the Department also presented evidence that the children stayed with Mother during unspecified periods and that, during one of those stays when Mother's boyfriend Luis was present, the children were sleeping within the presence of needles and pills. However, there is no evidence that Father was aware of Mother's behavior and disregarded it. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D); *In re B.M.S.*, 581 S.W.3d at 917; *In re E.R.W.*, 528 S.W.3d at 264; *see also, e.g.*, *In re V.A.*, 598 S.W.3d 317, 330 (Tex. App.—Houston [14th Dist.] 2020, no pet. h.); *In re J.E.M.M.*, 532 S.W.3d at 881–84. There is also no evidence that Father knew of the danger posed by his absence from the children's life and disregarded that danger—knowledge unnecessary under subsection (E), as discussed below. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E).

We conclude the evidence is legally insufficient for a reasonable trier of fact to form a firm belief or conviction that Father knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being. *See id.* § 161.001(b)(1)(D); *In re A.C.*, 560 S.W.3d at 631; *In re I.D.G.*, 579 S.W.3d at 850–51.

### 3. Conclusion

We sustain Father's first issue.

## B. Termination under § 161.001(b)(1)(E)—Endangering Course of Conduct

By his second issue, Father argues the evidence was legally and factually insufficient to support a finding that he engaged in a course of conduct that endangered the children.

13

Subsection (E) allows for termination of parental rights if clear and convincing evidence supports a conclusion that the parent "engaged in conduct . . . which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). As noted, "endanger" means "to expose to loss or injury [or] to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The term means "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment," but "it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *Id.*; *see In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). "Indeed, the law does not require that the child be a victim of abusive conduct before the Department can involuntarily terminate a parent's right to the child." *In re C.J.F.*, 134 S.W.3d 343, 352 (Tex. App.—Amarillo 2003, pet. denied) (citing *Dallas Cty. Child Protective Servs. v. Bowling*, 833 S.W.2d 730, 733 (Tex. App.—Dallas 1992, no pet.)). Unlike subsection (D), termination under (E) must be based on more than a single act or omission. *See Ruiz v. Tex. Dep't of Family & Protective Servs.*, 212 S.W.3d 804, 818 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

In determining whether a parent engaged in a course of "endangering" conduct, a trial court may consider conduct that occurred before and after the child's birth, in the child's presence and outside the child's presence, and before and after removal by the Department. *In re C.V.L.*, 591 S.W.3d at 750; *see In re J.O.A.*, 283 S.W.3d at 345. The relevant inquiry is whether evidence exists that a parental course of conduct endangered the child's physical or emotional well-being. *Walker*, 312 S.W.3d at 616–17. Ground (E) refers only to the parent's conduct, as evidenced by the parent's acts, but also by the parent's omissions or failure to act. *In re C.V.L.*, 591 S.W.3d 734, 750 (Tex. App.—Dallas

14

2019, pet. denied). Among the types of actions or omissions constituting evidence meeting this endangerment standard are criminal activity, convictions, and incarceration; drug abuse, and knowledge that a child's parent abused drugs; permitting a child's access to harmful medication; domestic violence and propensity for violence; and absence from a child's life. *See In re M.D.M.*, 579 S.W.3d 744, 765 (Tex. App.—Houston [1st Dist.] 2019, no pet.); *In re L.M.*, 572 S.W.3d 823, 834 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *In re R.A.G.*, 545 S.W.3d 645, 652 (Tex. App.—El Paso 2017, no pet.); *see also T.L. v. Tex. Dep't of Family & Protective Servs.*, No. 03-19-00382-CV, 2019 WL 5779913, at *4 (Tex. App.—Austin Nov. 6, 2019, pet. denied) (mem. op.) ("A parent's lengthy absence from a child's life can be conduct that endangers the child's emotional well-being").

Here, Father testified that his "arrests and incarcerations" pre-dated the birth of his oldest daughter, A.P., and that his criminal activity kept him from "being a supportive father." He stated he is currently incarcerated for "Possession of one to four with intent" and explained he could be incarcerated until 2031. C.W. testified that she, not Father, provided for the children since they were little[7]; that Father left when B.L. was eight months old; and that Father visited the children "probably" twice during the following decade but even then "barely [spent] time with them." There is also no evidence that Father called, wrote, or contacted the children prior to the initiation of the underlying termination suit. Because the children's Mother was also absent, a factfinder could reasonably conclude that this created an emotional vacuum in the children's lives that endangered their wellbeing. *See, e.g., In re U.P.*, 105 S.W.3d 222, 236 (Tex. App.—

---

[7] C.W. testified that "there were a couple of times when [Father] would buy a box of diapers or some clothes, whatever."

15

Houston [14th Dist.] 2003, pet denied), *overruled on other grounds by In re L.C.L.*, 599 S.W.3d 79 (Tex. App.—Houston [14th Dist.] 2020, pet. filed); *see also, e.g.*, *In re A.F.*, No. 07-19-00435-CV, 2020 WL 2786940, at *7 (Tex. App.—Amarillo May 29, 2020, pet. denied) (mem. op.); *J.B. v. Tex. Dep't of Family & Protective Servs.*, No. 03-19-00881-CV, 2020 WL 2183127, at *4 (Tex. App.—Austin May 6, 2020, pet. denied) (mem. op.). Father did not inquire about the children for over a decade, and he did not communicate with them apart from the two unspecified brief times he visited but actually spent time with Mother. This demonstrates a lack of concern for the children's wellbeing, and Father's lack of demonstrated concern for the children's wellbeing during the ten years preceding the termination suit is further evidence of endangerment. *See E.E. v. Tex. Dep't of Family & Protective Servs.*, 598 S.W.3d 389, 406 (Tex. App.—Austin 2020, no pet.); *In re S.M.L.*, 171 S.W.3d 472, 479 (Tex. App.—Houston [14th Dist.] 2005, no pet.), *overruled on other grounds by In re L.C.L.*, 599 S.W.3d at 85.

Finally, while there is evidence that Father took courses while incarcerated after receiving his service plan and sent letters to the children since the Department initiated the termination proceedings, this did not negate the endangerment posed by his absence from the majority of the children's lives.[8] *See In re N.J.H.*, 575 S.W.3d 822, 832 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("[E]vidence of improved conduct, especially of short-duration, does not conclusively negate the probative value of a long history of . . . irresponsible choices." (quoting *In re J.O.A.*, 283 S.W.3d at 346)).

---

[8] Father explained he enrolled in the "Authentic Manhood Program" while incarcerated, but that he was unable to complete it due to the COVID-19 pandemic. According to Father, this program teaches "how the effects of what the children go through not having their father or any parent for that matter." Father also enrolled in a program called "Bridges to Life," which is aimed at preventing participants from reoffending, but he was also unable to complete this program due to the pandemic.

We conclude that this evidence was legally and factually sufficient to form a firm belief or conviction in the trier of fact that Father engaged in an endangering course of conduct as to all three children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *In re A.C.*, 560 S.W.3d at 631; *In re M.D.M.*, 579 S.W.3d at 765; *In re U.P.*, 105 S.W.3d at 236.

We overrule Father's second issue.[9]

### III.   CONCLUSION

We modify the judgment to delete the trial court's finding that termination was proper under Texas Family Code § 161.001(b)(1)(D) and affirm as modified.

DORI CONTRERAS
Chief Justice

Delivered and filed the
19th day of November, 2020.

---

[9] In a single sentence, Father states that the evidence was insufficient to support that termination was in the best interest of the children. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). However, Father does not provide anything beyond this single statement, such as a clear and concise argument for this contention, citation to appropriate authority, or citation to relevant portions of the record. *See* TEX. R. APP. P. 38.1(i). Accordingly, we conclude this issue has been inadequately briefed. *See id.*; *see also Fredonia State Bank v. Gen. Am. Life Ins.*, 881 S.W.2d 279, 284 (Tex. 1994). Furthermore, we need not address Father's third and fourth issues challenging the sufficiency of the evidence under subsections (N) and (O) because only one ground is needed to support the termination of parental rights, and we have reviewed the sufficiency of the evidence underlying the grounds for termination under both subsections (D) and (E). *See In re N.G.*, 577 S.W.3d at 232.

17