NO









NO. 12-09-00401-CV

 

                         IN
THE COURT OF APPEALS

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER, TEXAS

 

                                                                             '     APPEAL
FROM THE 420TH

IN THE INTEREST OF C.T. AND
K.T,

CHILDREN                                                        '     JUDICIAL
DISTRICT COURT OF

 

                                                                             '     NACOGDOCHES
COUNTY, TEXAS

 





MEMORANDUM
OPINION

            L.M.
appeals the trial court’s finding that her appeal from an order terminating her
parental rights to C.T. and K.T. is frivolous.  We affirm.

 

Background

L.M.
is the mother of two daughters, C.T., born October 6, 1998, and K.T., born
January 2, 2000.  G.C.T.[1]
is the father of both daughters, but is not party to this appeal. After a bench
trial, the trial court terminated the parent-child relationship between L.M.
and her two daughters, finding that statutory grounds for termination existed,
and that termination was in the best interest of the children.  L.M. timely
filed a motion for new trial, a statement of points on appeal, and a notice of
appeal. In her statement of points, L.M. raised six grounds for appeal.  After
a hearing pursuant to section 263.405(d) of the Texas Family Code, the trial
court found that L.M. was indigent and that all six points for appeal were
frivolous. Further, the trial court denied her motion for new trial. L.M. has
appealed the trial court’s finding that the appeal is frivolous.

 

Review of Frivolous Finding

If
a trial court makes a frivolous finding, the aggrieved parent can appeal, but
the appeal is initially limited to the frivolousness issue.  See Tex. Fam. Code Ann. § 263.405(g)
(Vernon 2008); Lumpkin v. Dep’t of Family & Protective Servs.,
260 S.W.3d 524, 526 (Tex. App.—Houston [1st Dist.] 2008, no pet.).  That is,
before we can reach the substantive merits of an appeal in which a
frivolousness finding has been made, we must first determine whether the trial
court properly found the appeal to be frivolous. Id.  We review a
trial court’s determination that an appeal is frivolous under an abuse of
discretion standard.  Id.; In re M.N.V., 216 S.W.3d
833, 834 (Tex. App.—San Antonio 2006, no pet.).  Under this standard, we decide
whether the trial court acted without reference to any guiding rules or
principles; in other words, we must decide whether the act was arbitrary or
unreasonable.  Lumpkin, 260 S.W.3d at 527.

            Under
section 263.405 of the Texas Family Code, a trial court may determine that an
indigent party’s appeal from a termination order is frivolous as provided by
section 13.003(b) of the Texas Civil Practice and Remedies Code.  Tex. Fam. Code Ann. § 263.405(d)(3)
(Vernon 2008); In re M.N.V., 216 S.W.3d at 834.  In determining whether
an appeal is frivolous, the trial court may consider whether the appellant has
presented a substantial question for appellate review.  Tex. Civ. Prac. & Rem. Code Ann. § 13.003(b) (Vernon
2002); Tex. Fam. Code Ann. §
263.405(d)(3); In re M.N.V., 216 S.W.3d at 834-35.  An appeal is
frivolous when it lacks an arguable basis in law or in fact.  In re
M.N.V., 216 S.W.3d at 834.  Further, an appeal of a termination order
is limited to the issues presented in the statement of points.  See Tex. Fam. Code Ann. § 263.405(i)
(Vernon 2008); Lumpkin, 260 S.W.3d at 527.

 

Motion for Continuance

            In
her first point for appeal, L.M. argues that the trial court abused its
discretion in denying her motion for continuance and a request for an extension
of the dismissal date.

Facts

L.M.
filed a motion for continuance and request for an extension of the dismissal
date on January 12, 2009.  In her statement of points, L.M. stated that the
motion and request for extension were based upon the fact that she was under
indictment on two counts of endangering a child in Shelby County, Texas.  The
trial court denied the motion and request for extension. 

At
a bench trial on January 21, the trial court heard testimony from one witness. After
determining that there was another person entitled to citation and process in
the case, the trial court found that the dismissal date was February 16, 2009,
that extraordinary circumstances necessitated that the children remain in the
temporary managing conservatorship of the Department of Family and Protective
Services (the Department), and that continuing the appointment of the
Department as temporary managing conservator was in the children’s best
interest.  The trial court ordered that the case be retained on the court’s
docket for a period not to exceed 180 days after the one year time limit, and
stated that the new dismissal date was August 17, 2009. 

            When
the bench trial resumed on July 15, 2009, L.M. reurged her motion for
continuance based upon the fact that criminal indictments were still pending
against her. Again, the trial court denied L.M.’s motion for continuance.

Applicable
Law

            According
to section 161.2011 of the Texas Family Code, a parent may request a
continuance as follows:

 

(a)    
A parent whose rights are subject
to termination in a suit affecting the parent-child relationship and against
whom criminal charges are filed that directly relate to the grounds for which
termination is sought may file a motion requesting a continuance of the final
trial in the suit until the criminal charges are resolved.  The court may grant
the motion only if the court finds that a continuance is in the best interest
of the child. Notwithstanding any continuance granted, the court shall conduct
status and permanency hearings with respect to the child as required by Chapter
263 [of the Texas Family Code] and shall comply with the dismissal date under
Section 263.401 [of the Texas Family Code].

 

 See Tex. Fam. Code Ann. §
161.2011(a) (Vernon Supp. 2010).  Further, section 263.401 of the Texas Family
Code provides as follows:

 

(a)    
Unless the court has commenced the
trial on the merits or granted an extension under Subsection (b), on the first
Monday after the first anniversary of the date the court rendered a temporary
order appointing the department as temporary managing conservator, the court
shall dismiss the suit affecting the parent-child relationship filed by the
department that requests termination of the parent-child relationship or
requests that the department be named conservator of the child.

 

(b)    
Unless the court commenced the
trial on the merits, the court may not retain the suit on the court’s docket
after the time described by Subsection (a) unless the court finds that
extraordinary circumstances necessitate the child remaining in the temporary
managing conservatorship of the department and that continuing the appointment
of the department as temporary managing conservator is in the best interest of
the child. If the court makes those findings, the court may retain the suit on
the court’s docket for a period not to exceed 180 days after the time described
by Subsection (a).

 

(c)    
The court may not grant an
additional extension that extends the suit beyond the required date for
dismissal under Subsection (b).

 

See Tex. Fam. Code Ann. §
263.401(a), (b), (c) (Vernon 2008).

 

Analysis

            Here,
the trial court denied L.M.’s initial motion for continuance and request for
extension, but later granted an extension of the dismissal date from February
16, 2009 to August 17, 2009.  See Tex.
Fam. Code Ann. § 263.401(a), (b).  The trial court is allowed to grant
only one 180 day extension after the one year dismissal date.  See Tex. Fam. Code Ann. § 263.401(b), (c).  Otherwise,
the trial court must dismiss the suit affecting the parent-child relationship.  See
Tex. Fam. Code Ann. §
263.401(a).  When L.M. reurged her motion for continuance and request for
extension at the resumption of the trial on July 15, 2009, the trial court
could not grant an additional extension of the one year dismissal date or a
continuance and still comply with the mandatory dismissal provisions of section
263.401.  Because the trial court could not, as a matter of law, grant L.M.’s
motion for continuance and request for extension, it did not abuse its
discretion in denying the motion and request.  Thus, the trial court did not abuse
its discretion in determining that L.M.’s first point for appeal was frivolous.


 

Objections to Evidence

            In
her second point for appeal, L.M. contends that the trial court failed to
sustain certain objections during the trial and, thus, erroneously admitted
evidence of facts and circumstances that occurred prior to October 25, 2006.

Facts

            According
to L.M., an order was orally pronounced in open court on October 25, 2006, and
ratified on March 9, 2007. In that order, L.M. and G.C.T. were appointed joint
managing conservators of the children and L.M. was granted the exclusive right
to designate the primary residence of the children.  Further, L.M. stated that
the Department agreed to be dismissed from its prior court ordered relationship
with the children.  At the bench trial, L.M. objected to exhibits and testimony
based on information, conduct, or acts that occurred prior to October 25, 2006.
According to L.M., that time frame “goes behind” the last order affecting the
children.  The Department argued that witnesses may not be questioned on acts
or information that occurred prior to a previous order unless it shows a
pattern.  In other words, the Department stated, the prior abuse of the
children was relevant to the current case based upon that abuse.  The trial
court stated that previous alleged acts or conduct would be relevant to the
best interest determination, and overruled L.M.’s objection.  However, upon
L.M.’s request, the trial court granted her a “running objection” regarding
questions referring to a time period prior to October 25, 2006.

Standard
of Review

A
trial court's decision to admit or exclude evidence is reviewed under an abuse
of discretion standard.  See Rodriguez v. State, 203 S.W.3d 837,
841 (Tex. Crim. App. 2006); Montgomery v.  State, 810 S.W.2d 372,
390‑91 (Tex. Crim. App.1990).  The trial court is in the best position to
decide questions of admissibility, and we will uphold a trial court's decision
to admit or exclude evidence if it is Awithin
the zone of reasonable disagreement.@
 Rodriguez, 203 S.W.3d at 841.  A determination is beyond the
zone of reasonable disagreement if by no reasonable perception of common
experience could it be concluded that the proffered evidence had a tendency to
make the existence of a fact of consequence more or less probable than it would
be otherwise.  Montgomery, 810 S.W.2d at 391.  If the trial
court's ruling on the admission of evidence is correct under any theory of law,
the trial court's decision should not be disturbed, even if the trial court
gives the wrong reason for its ruling.  See Romero v. State,
800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

Applicable
Law

Section
161.001 of the family code permits a court to order termination of parental
rights if two elements are established.  Tex.
Fam. Code Ann. § 161.001 (Vernon Supp. 2010); In re J.M.T.,
39 S.W.3d 234, 237 (Tex. App.BWaco
1999, no pet.).  First, the parent must have engaged in any one of the acts or
omissions itemized in the first subsection of the statute. Tex. Fam. Code Ann. § 161.001(1)
(Vernon Supp. 2010); Green v. Texas Dep=t of Protective &
Regulatory Servs., 25 S.W.3d 213, 219 (Tex. App.BEl Paso 2000, no pet.); In re J.M.T.,
39 S.W.3d at 237.  Second, termination must be in the best interest of the
child.  Tex. Fam. Code Ann. § 161.001(2)
(Vernon Supp. 2010); In re J.M.T., 39 S.W.3d at 237.  

Analysis

In
addressing this issue, L.M. asserts the challenged evidence of abuse was not
admissible because it occurred prior to the rendition of the last order affecting
the parent-child relationship.  L.M.’s characterization of her second point for
appeal arises from Chapter 156 of the Texas Family Code governing a
modification proceeding.  See Tex.
Fam. Code Ann. § 156.101 (Vernon Supp. 2010).  However, the distinction
between section 156.101 governing a modification proceeding, and section
161.001 governing a termination proceeding, is more than procedural or
semantic.  Cf. In re C.A.M.M., 243 S.W.3d 211, 215 (Tex.
App.—Houston [14th Dist.] 2007, pet. denied).  Chapter 156 and chapter 161 are
distinct statutory schemes that involve different issues.  Cf. In re
V.L.K., 24 S.W.3d 338, 343 (Tex. 2000).  The legislature has determined
that the standard and burden of proof are different in modification and
termination suits.  Compare Tex.
Fam. Code Ann. § 156.101 and In re P.M.B., 2 S.W.3d 618,
621 (Tex. App.BHouston
[14th Dist.] 1999, no pet.) with Tex.
Fam. Code Ann. §161.001. 

In
a chapter 156 modification case, the controlling issues are whether the
circumstances of the child or a conservator have materially and substantially
changed since the date of a previous court order or mediated settlement
agreement, and whether modification is in the best interest of the child.  See
In re S.E.K., 294 S.W.3d 926, 929 (Tex. App.—Dallas 2009, pet. denied).
 Further, a trial court=s
modification of conservatorship is reviewed for abuse of discretion.  See
In re P.M.B., 2 S.W.3d at 621. Conversely, in a chapter 161
termination case, the controlling issues are whether the parent engaged in any
one of the acts or omissions itemized in the first subsection of the statute,
and whether termination is in the best interest of the child.  See Tex. Fam. Code Ann. § 161.001(1),
(2); Green, 25 S.W.3d at 219; In re J.M.T., 39
S.W.3d at 237. Additionally, both elements must be established by clear and
convincing evidence.  See Tex.
Fam. Code Ann. § 161.001; Wiley v. Spratlan, 543 S.W.2d
349, 351 (Tex. 1976); In re J.M.T., 39 S.W.3d at 237. 

Although
both chapters share the overriding concern that a modification or termination
be in the best interest of the child, “the consequences of termination are
permanent, unlike the consequences of modification . . . proceedings, which
makes an analogy between the two fairly weak.”  See In re N.A.F.,
282 S.W.3d 113, 117 (Tex. App.—Waco 2009, no pet.) (quoting In re D.S.P.,
210 S.W.3d 776, 780-81 (Tex. App.—Corpus Christi 2006, no pet.)).  Further,
subsections (D) and (E) of section 161.101 used to terminate L.M.’s parental
rights contain no restriction of the time period used to determine whether the
evidence supports a termination order.  See In re D.T., 34 S.W.3d
625, 632-34 (Tex. App.BFort
Worth 2000, pet. denied) (subsection (E) requires voluntary, deliberate, and
conscious Acourse of
conduct@ by parent
that endangers child=s
physical and emotional well being) (while subsection (E) requires courts to
look at the environment of the child to determine whether termination
necessary).

Because
this case is a termination proceeding, and not a modification proceeding, we
conclude that the trial court did not abuse its discretion in overruling L.M.’s
objections to exhibits and testimony based on information, conduct, or acts
that occurred prior to October 25, 2006.  Thus, the trial court did not abuse
its discretion in determining that L.M.’s second point for appeal was
frivolous.

 

Statutory Grounds for Termination

In
her third, fourth, and fifth points for appeal, L.M. contends there is
factually insufficient evidence that she (1) knowingly placed or knowingly
allowed the children to remain in conditions or surroundings that endangered
their physical or emotional well being; (2) engaged in conduct or knowingly
placed the children with persons who engaged in conduct that endangered their
physical or emotional well being; and (3) failed to comply with the provisions
of a court order that specifically established the actions necessary for her to
obtain the return of the children, who had been in the permanent or temporary
managing conservatorship of the Department of Family and Protective Services
for not less than nine months as a result of the children’s removal from L.M.
under Chapter 262 for the abuse or neglect of the children. 

Standard
of Review

As
noted above, section 161.001 of the family code permits a court to order
termination of parental rights if two elements are established.  Tex. Fam. Code Ann. § 161.001; In
re J.M.T., 39 S.W.3d at 237.  First, the parent must have engaged in
any one of the acts or omissions itemized in the first subsection of the
statute.  Tex. Fam. Code Ann. § 161.001(1);
Green, 25 S.W.3d at 219; In re J.M.T., 39 S.W.3d at
237.  Second, termination must be in the best interest of the child.  Tex. Fam. Code Ann. § 161.001(2); In
re J.M.T., 39 S.W.3d at 237.  Additionally, both elements must be
established by clear and convincing evidence, and proof of one element does not
alleviate the petitioner=s
burden of proving the other.  Tex. Fam.
Code Ann. § 161.001; Wiley, 543 S.W.2d at 351; In re
J.M.T., 39 S.W.3d at 237.  Clear and convincing evidence means Athe measure or degree of
proof that will produce in the mind of the trier of fact a firm belief or
conviction as to the truth of the allegations sought to be established.@  Tex. Fam. Code Ann. § 101.007 (Vernon 2008).  

To
decide whether a trial court has abused its discretion in determining that the
evidence supporting a termination order is factually sufficient, and,
therefore, that an appeal complaining that the evidence is factually
insufficient is frivolous, we engage in a two pronged inquiry.  In re
M.R.J.M., 193 S.W.3d 670, 674 (Tex. App.–Fort Worth 2006, no pet.).  First,
we decide whether the trial court had sufficient information upon which to
exercise its discretion, and, second, we determine whether the trial court
erred in the application of its discretion.  Id. (citing In
re T.D.C., 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet denied)
(op. on reh’g)).  A factual sufficiency review is encompassed within the first
prong.  Id.  The appropriate standard for reviewing a factual
sufficiency challenge to the termination findings is whether the evidence is
such that a fact finder could reasonably form a firm belief or conviction about
the truth of the petitioner=s
allegations.  In re C.H., 89 S.W.3d 17, 25 (Tex. 2002).  In
determining whether the fact finder has met this standard, an appellate court
considers all the evidence in the record, both that in support of and contrary
to the trial court=s
findings.  Id. at 27-29.   

Applicable
Law

Section
161.001(1)(E) of the Texas Family Code states that the court may order
termination of the parent-child relationship if the court finds by clear and
convincing evidence that the parent has engaged in conduct or knowingly placed
the child with persons who engaged in conduct that endangers the physical or
emotional well being of the child.  Tex.
Fam. Code Ann. § 161.001(1)(E) (Vernon Supp. 2010).  The specific danger
to the child=s well
being need not be established as an independent proposition, but may instead be
inferred from parental misconduct.  Texas Dep=t of Human Servs. v. Boyd,
727 S.W.2d 531, 533 (Tex. 1987); In re J.J., 911 S.W.2d 437, 440
(Tex. App.BTexarkana
1995, writ denied).  Further, scienter is not required for an appellant=s own acts under section
161.001(1)(E), although it is required when a parent places her child with
others who engage in endangering acts.  In re U.P., 105 S.W.3d
222, 236 (Tex. App.BHouston
[14th Dist.] 2003, pet. denied).  Finally, the need for permanence is a
paramount consideration for the child=s
present and future physical and emotional needs.  In re N.K., 99
S.W.3d 295, 301 n.9 (Tex. App.BTexarkana
2003, no pet.); In re M.D.S., 1 S.W.3d 190, 200 (Tex. App.–Fort
Worth 2001, no pet.). 

AEndanger@ means to expose to loss or
injury or to jeopardize.  Boyd, 727 S.W.2d at 533; In re
D.M., 58 S.W.3d 801, 811 (Tex. App –Fort Worth 2001, no pet.).  Thus,
it is not necessary that the conduct be directed at the child or that the child
actually suffers injury.  Boyd, 727 S.W.2d at 533; In re
J.J., 911 S.W.2d at 440.  Subsection (E) requires us to look at the
parent=s conduct
alone, including actions, omissions, or the parent=s failure to act.  In re D.J.,
100 S.W.3d 658, 662 (Tex. App.BDallas
2003, pet. denied); In re D.M., 58 S.W.3d at 811.  Further,
termination under subsection (E) must be based on more than a single act or
omission.   In re D.M., 58 S.W.3d at 812; In re D.T.,
34 S.W.3d at 634.  A voluntary, deliberate, and conscious Acourse of conduct@ by the parent that
endangers the child=s
physical and emotional well being is required.  In re D.M., 58
S.W.3d at 812; In re D.T., 34 S.W.3d at 634. 

Analysis

            In
this case, the Department presented evidence that L.M.’s actions and her
failure to act endangered C.T. and K.T. At trial, L.M. testified that C.T. and
K.T. were removed from her home in 2006 because of allegations that her
husband, K.M., sexually abused them.  After L.M. completed her service plan,
C.T. and K.T. were returned to L.M. until May 2007 when the children were
removed from her home again because their father, G.C.T., filed a petition to
modify. 

L.M.
also stated that before the children were returned to her in 2006, K.M.’s
mother told her that the sexual abuse did not occur.  According to L.M., C.T.
told K.M.’s mother that K.M. never touched her, and K.M.’s sister verified
C.T.’s statement. L.M. stated that at that point, she changed her belief that
the sexual abuse occurred.  Sonya Holman, a caseworker with the Department,
testified that L.M. never reported this discussion between K.M.’s mother,
K.M.’s sister, and C.T. 

L.M.
testified that she “had no clue” about the sexual abuse until she received a
letter from C.T. in October 2008.  Bethany Stephens, an assistant district
attorney with the Shelby County District Attorney’s office in 2007, stated that
K.M. was indicted for three counts each of the aggravated sexual assault of
C.T. and K.T., was found guilty of the anal penetration of C.T., and was
sentenced to life imprisonment.  Stephens did not see how L.M. could not have
known that the girls “were being raped repeatedly over the course of several
years.”  Stephens stated that it “can’t even possibly be true” that L.M. did
not know and had not been informed about the acts committed against her
children by K.M.  In preparing for K.M.’s trial, Stephens stated that she
called L.M and summarized the details of the case, telling L.M. that K.M. had
raped both girls.  She believed L.M. stated that she “couldn’t be expected to
help” them. 

Donna
Martinez, a licensed professional counselor, testified that she began counseling
both children in August 2008.  She stated that if L.M. testified that she did
not know anything had happened to the children until she received a letter from
C.T. last year, she would consider that “a full lie.”  According to Martinez,
C.T. told L.M. what had occurred on more than one occasion, but L.M. did not
believe her and stated that it could not “have possibly been true.”  Ashley
Gipson, a caseworker and supervisor with the Department, and Jean Stanley, a
licensed professional counselor and licensed sex opinion and treatment
provider, testified that L.M.’s attitude toward the sexual abuse allegations
was that if she did not hear it directly from the girls or see it, it never
happened.

At
K.M.’s trial for the sexual assault of C.T., L.M. testified that C.T.’s anus
was scratched because she had pinworms.  She also told Stephens that she
believed something had happened to C.T., but that she did not believe K.M. had
done anything. L.M. stated that she was lying under oath at K.M.’s trial
because she had been threatened by K.M.’s mother that if she did not do so, she
would make sure she lost custody of her son and daughters.  Stephens stated
that L.M. never supported the girls, never believed them, and “fought
[Stephens] tooth and nail” in prosecuting K.M. 

Before
the children were removed in 2006, C.T. told L.M. that she had blood in her
underwear.  L.M. noticed one or two quarter-size spots of blood.  Because she
was concerned, L.M. talked to K.M. about it, and he said that it might be from
a previous bicycle accident.  Vivian Mobley, the guardian ad litem for C.T. and
K.T., testified that L.M. told her she might have known that K.M. was raping
the girls because she saw blood in one of the girls’ underwear.  According to
Gipson and Stanley, L.M. explained that the “tear” to C.T.’s genitals could
have been from a bicycle wreck.

Further,
L.M. stated that one night she awoke to go to the bathroom and heard C.T.
crying.  When she went into the bedroom, she noticed that the overhead light
was on and K.T. was asleep. C.T. was sitting up on the bed and K.M. was
kneeling beside the bed.  L.M. asked K.M. what the problem was and he cursed or
yelled at her.  She went back to their bedroom.  According to Mobley, L.M.
never reported this incident. 

In
August 2007, L.M. was indicted for two counts of endangering a child because
L.M. allegedly allowed the girls to live with K.M., a registered sex offender.  Although
L.M. stated that she was aware that K.M. had been previously imprisoned on a
charge of sexual assault, she also said she was not “fully aware” that K.M. was
a sex offender until he was arrested in 2006.  Stephens testified that in a
letter to K.M., L.M. contradicted her statement that she did not know K.M. had
been a convicted child rapist or who he had raped.  L.M. admitted writing
letters to K.M. while he was in prison, telling him that she loved him, and
sending him Father’s Day letters in June 2008.  She did not tell K.M. how much
she despised him for sexually assaulting her children because she did not want
to jeopardize custody of her son.  However, at trial, L.M. stated that she was
divorcing K.M. and admitted that K.M. sexually assaulted C.T. and K.T. 

Although
there is some conflicting evidence that some of L.M.’s actions or omissions
were the result of her fears of losing custody of the children, the trial court
could have resolved this conflict in favor of its finding.  The trial court
could have found that L.M. ignored signs that C.T. and K.T. were being sexually
abused by K.M., refused to believe that K.M. sexually assaulted her children,
testified on behalf of K.M., and wrote love letters to K.M. even after he was
imprisoned for the sexual assault of C.T.  Based on this finding, the trial
court also could have determined that L.M. engaged in conduct that endangered
the children=s
physical or emotional well being.  Although there is some disputed evidence,
this evidence is not so significant that a reasonable trier of fact could not
have reconciled this evidence in favor of its finding and formed a firm belief
or conviction that L.M. engaged in conduct or knowingly placed C.T. and K.T.
with persons who engaged in conduct which endangered their physical or
emotional well being. Accordingly, the trial court did not abuse its discretion
in determining that L.M.’s fourth point for appeal was frivolous.[2]

 

Best Interest of
the Child

In
her sixth point for appeal, L.M. argues that there is factually insufficient
evidence that termination was in the best interests of the children. 

Applicable
Law

In
determining the best interest of the child, a number of factors have been
considered, including (1) the desires of the child; (2) the emotional and
physical needs of the child now and in the future; (3) the emotional and
physical danger to the child now and in the future; (4) the parental abilities
of the individuals seeking custody; (5) the programs available to assist these
individuals; (6) the plans for the child by these individuals; (7) the
stability of the home; (8) the acts or omissions of the parent that may
indicate the existing parent-child relationship is not a proper one; and (9)
any excuse for the acts or omissions of the parent.  Holley v. Adams,
544 S.W.2d 367, 371-72 (Tex. 1976).

This
list is not exhaustive, but simply indicates considerations that have been or
could be pertinent.  Id.  However, the best interest of the child
does not require proof of any unique set of factors nor limit proof to any
specific factors.  In re D.M., 58 S.W.3d at 814.  The Holley
test focuses on the best interest of the child, not the parent=s best interest.  Dupree
v. Texas Dep=t
of Protective & Regulatory Servs., 907 S.W.2d 81, 86 (Tex. App.BDallas 1995, no writ).

Analysis

According
to Martinez, C.T. stated that the only way she could return to her mother is if
L.M. swore that she would never have a boyfriend in her home again. Holman
stated that C.T. talks about being adopted and living where someone will
protect her.  Martinez stated that K.T. does not want to return to L.M. because
she does not trust her.  According to Holman, K.T. never wants to see L.M.
again. Carmen Rita Kaimann, Ph.D., a licensed psychologist, tested both C.T.
and K.T. Kaimann stated that C.T. suffers from depression and post traumatic
stress disorder (PTSD).  According to Kaimann, K.T. appeared to be more
traumatized than C.T., appeared to have more severe PTSD symptoms, had more
disorganized thinking, was very depressed, and was very emotionally labile.  According
to Kaimann, K.T. reported hearing strange voices and was “emotionally
disturbed.” Martinez and Holman describe C.T. as being angry, aggressive, and
defiant, and K.T. as being withdrawn, fearful, and shaken. 

Ray
Thomas Johnston, a licensed counselor, testified that he has been counseling
L.M. since January 2009.  According to Johnston, L.M. was very “forthcoming” in
telling him that her daughters had been sexually assaulted and that she had
made some “very egregious errors” in not taking steps to protect them. L.M.
told Johnston that she did not heed some warning signs including blood in the
underwear and finding K.M. in the room with a daughter.  Johnston stated that
he has seen L.M. accept responsibility for what she has done, although he
believes that L.M. needs to work on her parenting skills, including protecting
and nurturing her children.  According to Stanley, L.M. never took on the role
as a parent to protect or meet the children’s emotional and psychological
needs.  L.M. testified that she has a wonderful support system and has been
able to take care of herself. She also admitted that she was under a tremendous
amount of pressure in 2006 from K.M. and his mother and that she was trying to
protect all of her children. 

Kaimann
stated that it was in C.T.’s and K.T.’s best interest for L.M.’s parental
rights to be terminated because L.M. proved to be incapable of providing a safe
and stable home environment. Martinez, Gipson, and Holman believe it is in the
children’s best interest for L.M.’s parental rights to be terminated.  Although
there is some conflicting testimony, the trial court could have disregarded
L.M.’s testimony that she believed the children had been sexually assaulted,
and that she could parent and protect the children.  The trial court could have
found that L.M. failed to demonstrate that she could protect the children,
ignored signs of sexual abuse, and refused to accept the girls’ outcries.  Further,
the trial court could have determined that neither child wanted to return to
L.M., that both children had severe psychological problems as a result of the
sexual abuse, and that L.M. would be unable to adequately parent the children.  Although
there was some disputed evidence, this evidence is not so significant that a
reasonable trier of fact could not have reconciled this evidence in favor of
its finding and formed a firm belief or conviction that terminating L.M.=s parental rights was in
the best interest of C.T. and K.T. Accordingly, the trial court did not abuse
its discretion in determining that L.M.’s sixth point for appeal was frivolous.

Disposition

The
order of the trial court is affirmed.

                                                

                                                                                                JAMES
T. WORTHEN    

                                                                                                            Chief
Justice

Opinion delivered November 30, 2010.

Panel consisted of
Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

(PUBLISH)









[1]
 On May 30, 2009, G.C.T. signed an unrevoked or irrevocable affidavit of
voluntary relinquishment of parental rights to the Department of Family and
Protective Services. Accordingly, on October 28, 2009, the trial court ordered
the termination of his parent-child relationship with C.T. and K.T.





[2] As only one ground is required to support a
termination of parental rights, we need not address L.M.’s arguments under her
third and fifth points on appeal challenging the trial court’s findings
regarding subsections (D) and (O) of section 161.001of the family code.