# NO. 12-09-00401-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | |
|---|---|
| *IN THE INTEREST OF C.T. AND K.T,*<br>*CHILDREN* | § *APPEAL FROM THE 420TH*<br>§ *JUDICIAL DISTRICT COURT OF*<br>§ *NACOGDOCHES COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

L.M. appeals the trial court's finding that her appeal from an order terminating her parental rights to C.T. and K.T. is frivolous. We affirm.

## BACKGROUND

L.M. is the mother of two daughters, C.T., born October 6, 1998, and K.T., born January 2, 2000. G.C.T.[1] is the father of both daughters, but is not party to this appeal. After a bench trial, the trial court terminated the parent-child relationship between L.M. and her two daughters, finding that statutory grounds for termination existed, and that termination was in the best interest of the children. L.M. timely filed a motion for new trial, a statement of points on appeal, and a notice of appeal. In her statement of points, L.M. raised six grounds for appeal. After a hearing pursuant to section 263.405(d) of the Texas Family Code, the trial court found that L.M. was indigent and that all six points for appeal were frivolous. Further, the trial court denied her motion for new trial. L.M. has appealed the trial court's finding that the appeal is frivolous.

## REVIEW OF FRIVOLOUS FINDING

If a trial court makes a frivolous finding, the aggrieved parent can appeal, but the appeal is initially limited to the frivolousness issue. *See* TEX. FAM. CODE ANN. § 263.405(g) (Vernon 2008); ***Lumpkin v. Dep't of Family & Protective Servs.***, 260

---

[1] On May 30, 2009, G.C.T. signed an unrevoked or irrevocable affidavit of voluntary relinquishment of parental rights to the Department of Family and Protective Services. Accordingly, on October 28, 2009, the trial court ordered the termination of his parent-child relationship with C.T. and K.T.

S.W.3d 524, 526 (Tex. App.—Houston [1st Dist.] 2008, no pet.). That is, before we can reach the substantive merits of an appeal in which a frivolousness finding has been made, we must first determine whether the trial court properly found the appeal to be frivolous. *Id.* We review a trial court's determination that an appeal is frivolous under an abuse of discretion standard. *Id.*; *In re M.N.V.*, 216 S.W.3d 833, 834 (Tex. App.—San Antonio 2006, no pet.). Under this standard, we decide whether the trial court acted without reference to any guiding rules or principles; in other words, we must decide whether the act was arbitrary or unreasonable. *Lumpkin*, 260 S.W.3d at 527.

Under section 263.405 of the Texas Family Code, a trial court may determine that an indigent party's appeal from a termination order is frivolous as provided by section 13.003(b) of the Texas Civil Practice and Remedies Code. TEX. FAM. CODE ANN. § 263.405(d)(3) (Vernon 2008); *In re M.N.V.*, 216 S.W.3d at 834. In determining whether an appeal is frivolous, the trial court may consider whether the appellant has presented a substantial question for appellate review. TEX. CIV. PRAC. & REM. CODE ANN. § 13.003(b) (Vernon 2002); TEX. FAM. CODE ANN. § 263.405(d)(3); *In re M.N.V.*, 216 S.W.3d at 834-35. An appeal is frivolous when it lacks an arguable basis in law or in fact. *In re M.N.V.*, 216 S.W.3d at 834. Further, an appeal of a termination order is limited to the issues presented in the statement of points. *See* TEX. FAM. CODE ANN. § 263.405(i) (Vernon 2008); *Lumpkin*, 260 S.W.3d at 527.

**MOTION FOR CONTINUANCE**

In her first point for appeal, L.M. argues that the trial court abused its discretion in denying her motion for continuance and a request for an extension of the dismissal date.

**Facts**

L.M. filed a motion for continuance and request for an extension of the dismissal date on January 12, 2009. In her statement of points, L.M. stated that the motion and request for extension were based upon the fact that she was under indictment on two counts of endangering a child in Shelby County, Texas. The trial court denied the motion and request for extension.

At a bench trial on January 21, the trial court heard testimony from one witness. After determining that there was another person entitled to citation and process in the case, the trial court found that the dismissal date was February 16, 2009, that extraordinary circumstances necessitated that the children remain in the temporary

managing conservatorship of the Department of Family and Protective Services (the Department), and that continuing the appointment of the Department as temporary managing conservator was in the children's best interest. The trial court ordered that the case be retained on the court's docket for a period not to exceed 180 days after the one year time limit, and stated that the new dismissal date was August 17, 2009.

When the bench trial resumed on July 15, 2009, L.M. reurged her motion for continuance based upon the fact that criminal indictments were still pending against her. Again, the trial court denied L.M.'s motion for continuance.

## **Applicable Law**

According to section 161.2011 of the Texas Family Code, a parent may request a continuance as follows:

> (a) A parent whose rights are subject to termination in a suit affecting the parent-child relationship and against whom criminal charges are filed that directly relate to the grounds for which termination is sought may file a motion requesting a continuance of the final trial in the suit until the criminal charges are resolved. The court may grant the motion only if the court finds that a continuance is in the best interest of the child. Notwithstanding any continuance granted, the court shall conduct status and permanency hearings with respect to the child as required by Chapter 263 [of the Texas Family Code] and shall comply with the dismissal date under Section 263.401 [of the Texas Family Code].

*See* TEX. FAM. CODE ANN. § 161.2011(a) (Vernon Supp. 2010). Further, section 263.401 of the Texas Family Code provides as follows:

> (a) Unless the court has commenced the trial on the merits or granted an extension under Subsection (b), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court shall dismiss the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child.
>
> (b) Unless the court commenced the trial on the merits, the court may not retain the suit on the court's docket after the time described by Subsection (a) unless the court finds that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship of the department and that continuing the appointment of the department as temporary managing conservator is in the best interest of the child. If the court makes those findings, the court may retain the suit on the court's docket for a period not to exceed 180 days after the time described by Subsection (a).
>
> (c) The court may not grant an additional extension that extends the suit beyond the required date for dismissal under Subsection (b).

*See* TEX. FAM. CODE ANN. § 263.401(a), (b), (c) (Vernon 2008).

## Analysis

Here, the trial court denied L.M.'s initial motion for continuance and request for extension, but later granted an extension of the dismissal date from February 16, 2009 to August 17, 2009. *See* TEX. FAM. CODE ANN. § 263.401(a), (b). The trial court is allowed to grant only one 180 day extension after the one year dismissal date. *See* TEX. FAM. CODE ANN. § 263.401(b), (c). Otherwise, the trial court must dismiss the suit affecting the parent-child relationship. *See* TEX. FAM. CODE ANN. § 263.401(a). When L.M. reurged her motion for continuance and request for extension at the resumption of the trial on July 15, 2009, the trial court could not grant an additional extension of the one year dismissal date or a continuance and still comply with the mandatory dismissal provisions of section 263.401. Because the trial court could not, as a matter of law, grant L.M.'s motion for continuance and request for extension, it did not abuse its discretion in denying the motion and request. Thus, the trial court did not abuse its discretion in determining that L.M.'s first point for appeal was frivolous.

## OBJECTIONS TO EVIDENCE

In her second point for appeal, L.M. contends that the trial court failed to sustain certain objections during the trial and, thus, erroneously admitted evidence of facts and circumstances that occurred prior to October 25, 2006.

## Facts

According to L.M., an order was orally pronounced in open court on October 25, 2006, and ratified on March 9, 2007. In that order, L.M. and G.C.T. were appointed joint managing conservators of the children and L.M. was granted the exclusive right to designate the primary residence of the children. Further, L.M. stated that the Department agreed to be dismissed from its prior court ordered relationship with the children. At the bench trial, L.M. objected to exhibits and testimony based on information, conduct, or acts that occurred prior to October 25, 2006. According to L.M., that time frame "goes behind" the last order affecting the children. The Department argued that witnesses may not be questioned on acts or information that occurred prior to a previous order unless it shows a pattern. In other words, the Department stated, the prior abuse of the children was relevant to the current case based upon that abuse. The trial court stated that previous alleged acts or conduct would be relevant to the best interest determination, and overruled L.M.'s objection. However, upon L.M.'s request, the trial court granted her a

"running objection" regarding questions referring to a time period prior to October 25, 2006.

## Standard of Review

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *See* *Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006); *Montgomery v. State*, 810 S.W.2d 372, 390-91 (Tex. Crim. App.1990). The trial court is in the best position to decide questions of admissibility, and we will uphold a trial court's decision to admit or exclude evidence if it is "within the zone of reasonable disagreement." *Rodriguez*, 203 S.W.3d at 841. A determination is beyond the zone of reasonable disagreement if by no reasonable perception of common experience could it be concluded that the proffered evidence had a tendency to make the existence of a fact of consequence more or less probable than it would be otherwise. *Montgomery*, 810 S.W.2d at 391. If the trial court's ruling on the admission of evidence is correct under any theory of law, the trial court's decision should not be disturbed, even if the trial court gives the wrong reason for its ruling. *See* *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

## Applicable Law

Section 161.001 of the family code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001 (Vernon Supp. 2010); *In re J.M.T.*, 39 S.W.3d 234, 237 (Tex. App.–Waco 1999, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the first subsection of the statute. TEX. FAM. CODE ANN. § 161.001(1) (Vernon Supp. 2010); *Green v. Texas Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 213, 219 (Tex. App.–El Paso 2000, no pet.); *In re J.M.T.*, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(2) (Vernon Supp. 2010); *In re J.M.T.*, 39 S.W.3d at 237.

## Analysis

In addressing this issue, L.M. asserts the challenged evidence of abuse was not admissible because it occurred prior to the rendition of the last order affecting the parent-child relationship. L.M.'s characterization of her second point for appeal arises from Chapter 156 of the Texas Family Code governing a modification proceeding. *See* TEX. FAM. CODE ANN. § 156.101 (Vernon Supp. 2010). However, the distinction between

section 156.101 governing a modification proceeding, and section 161.001 governing a termination proceeding, is more than procedural or semantic. *Cf. **In re C.A.M.M.***, 243 S.W.3d 211, 215 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Chapter 156 and chapter 161 are distinct statutory schemes that involve different issues. *Cf. **In re V.L.K.***, 24 S.W.3d 338, 343 (Tex. 2000). The legislature has determined that the standard and burden of proof are different in modification and termination suits. *Compare* TEX. FAM. CODE ANN. § 156.101 *and **In re P.M.B.***, 2 S.W.3d 618, 621 (Tex. App.–Houston [14th Dist.] 1999, no pet.) *with* TEX. FAM. CODE ANN. §161.001.

In a chapter 156 modification case, the controlling issues are whether the circumstances of the child or a conservator have materially and substantially changed since the date of a previous court order or mediated settlement agreement, and whether modification is in the best interest of the child. *See **In re S.E.K.***, 294 S.W.3d 926, 929 (Tex. App.—Dallas 2009, pet. denied). Further, a trial court′s modification of conservatorship is reviewed for abuse of discretion. *See **In re P.M.B.***, 2 S.W.3d at 621. Conversely, in a chapter 161 termination case, the controlling issues are whether the parent engaged in any one of the acts or omissions itemized in the first subsection of the statute, and whether termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(1), (2); ***Green***, 25 S.W.3d at 219; ***In re J.M.T.***, 39 S.W.3d at 237. Additionally, both elements must be established by clear and convincing evidence. *See* TEX. FAM. CODE ANN. § 161.001; ***Wiley v. Spratlan***, 543 S.W.2d 349, 351 (Tex. 1976); ***In re J.M.T.***, 39 S.W.3d at 237.

Although both chapters share the overriding concern that a modification or termination be in the best interest of the child, "the consequences of termination are permanent, unlike the consequences of modification . . . proceedings, which makes an analogy between the two fairly weak." *See **In re N.A.F.***, 282 S.W.3d 113, 117 (Tex. App.—Waco 2009, no pet.) (quoting ***In re D.S.P.***, 210 S.W.3d 776, 780-81 (Tex. App.—Corpus Christi 2006, no pet.)). Further, subsections (D) and (E) of section 161.101 used to terminate L.M.'s parental rights contain no restriction of the time period used to determine whether the evidence supports a termination order. *See **In re D.T.***, 34 S.W.3d 625, 632-34 (Tex. App.–Fort Worth 2000, pet. denied) (subsection (E) requires voluntary, deliberate, and conscious "course of conduct" by parent that endangers child′s

physical and emotional well being) (while subsection (E) requires courts to look at the environment of the child to determine whether termination necessary).

Because this case is a termination proceeding, and not a modification proceeding, we conclude that the trial court did not abuse its discretion in overruling L.M.'s objections to exhibits and testimony based on information, conduct, or acts that occurred prior to October 25, 2006. Thus, the trial court did not abuse its discretion in determining that L.M.'s second point for appeal was frivolous.

### STATUTORY GROUNDS FOR TERMINATION

In her third, fourth, and fifth points for appeal, L.M. contends there is factually insufficient evidence that she (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered their physical or emotional well being; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well being; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children, who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from L.M. under Chapter 262 for the abuse or neglect of the children.

### Standard of Review

As noted above, section 161.001 of the family code permits a court to order termination of parental rights if two elements are established. TEX. FAM. CODE ANN. § 161.001; *In re J.M.T.*, 39 S.W.3d at 237. First, the parent must have engaged in any one of the acts or omissions itemized in the first subsection of the statute. TEX. FAM. CODE ANN. § 161.001(1); *Green*, 25 S.W.3d at 219; *In re J.M.T.*, 39 S.W.3d at 237. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(2); *In re J.M.T.*, 39 S.W.3d at 237. Additionally, both elements must be established by clear and convincing evidence, and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; *Wiley*, 543 S.W.2d at 351; *In re J.M.T.*, 39 S.W.3d at 237. Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (Vernon 2008).

To decide whether a trial court has abused its discretion in determining that the evidence supporting a termination order is factually sufficient, and, therefore, that an appeal complaining that the evidence is factually insufficient is frivolous, we engage in a two pronged inquiry. *In re M.R.J.M.*, 193 S.W.3d 670, 674 (Tex. App.–Fort Worth 2006, no pet.). First, we decide whether the trial court had sufficient information upon which to exercise its discretion, and, second, we determine whether the trial court erred in the application of its discretion. *Id.* (citing *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet denied) (op. on reh'g)). A factual sufficiency review is encompassed within the first prong. *Id.* The appropriate standard for reviewing a factual sufficiency challenge to the termination findings is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the petitioner's allegations. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In determining whether the fact finder has met this standard, an appellate court considers all the evidence in the record, both that in support of and contrary to the trial court's findings. *Id.* at 27-29.

**Applicable Law**

Section 161.001(1)(E) of the Texas Family Code states that the court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical or emotional well being of the child. TEX. FAM. CODE ANN. § 161.001(1)(E) (Vernon Supp. 2010). The specific danger to the child's well being need not be established as an independent proposition, but may instead be inferred from parental misconduct. *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987); *In re J.J.*, 911 S.W.2d 437, 440 (Tex. App.–Texarkana 1995, writ denied). Further, scienter is not required for an appellant's own acts under section 161.001(1)(E), although it is required when a parent places her child with others who engage in endangering acts. *In re U.P.*, 105 S.W.3d 222, 236 (Tex. App.–Houston [14th Dist.] 2003, pet. denied). Finally, the need for permanence is a paramount consideration for the child's present and future physical and emotional needs. *In re N.K.*, 99 S.W.3d 295, 301 n.9 (Tex. App.–Texarkana 2003, no pet.); *In re M.D.S.*, 1 S.W.3d 190, 200 (Tex. App.–Fort Worth 2001, no pet.).

"Endanger" means to expose to loss or injury or to jeopardize.  ***Boyd***, 727 S.W.2d at 533; ***In re D.M.***, 58 S.W.3d 801, 811 (Tex. App –Fort Worth 2001, no pet.).  Thus, it is not necessary that the conduct be directed at the child or that the child actually suffers injury.  ***Boyd***, 727 S.W.2d at 533; ***In re J.J.***, 911 S.W.2d at 440.  Subsection (E) requires us to look at the parent's conduct alone, including actions, omissions, or the parent's failure to act.  ***In re D.J.***, 100 S.W.3d 658, 662 (Tex. App.–Dallas 2003, pet. denied); ***In re D.M.***, 58 S.W.3d at 811.  Further, termination under subsection (E) must be based on more than a single act or omission.  ***In re D.M.***, 58 S.W.3d at 812; ***In re D.T.***, 34 S.W.3d at 634.  A voluntary, deliberate, and conscious "course of conduct" by the parent that endangers the child's physical and emotional well being is required.  ***In re D.M.***, 58 S.W.3d at 812; ***In re D.T.***, 34 S.W.3d at 634.

**<u>Analysis</u>**

In this case, the Department presented evidence that L.M.'s actions and her failure to act endangered C.T. and K.T.  At trial, L.M. testified that C.T. and K.T. were removed from her home in 2006 because of allegations that her husband, K.M., sexually abused them.  After L.M. completed her service plan, C.T. and K.T. were returned to L.M. until May 2007 when the children were removed from her home again because their father, G.C.T., filed a petition to modify.

L.M. also stated that before the children were returned to her in 2006, K.M.'s mother told her that the sexual abuse did not occur.  According to L.M., C.T. told K.M.'s mother that K.M. never touched her, and K.M.'s sister verified C.T.'s statement. L.M. stated that at that point, she changed her belief that the sexual abuse occurred.  Sonya Holman, a caseworker with the Department, testified that L.M. never reported this discussion between K.M.'s mother, K.M.'s sister, and C.T.

L.M. testified that she "had no clue" about the sexual abuse until she received a letter from C.T. in October 2008.  Bethany Stephens, an assistant district attorney with the Shelby County District Attorney's office in 2007, stated that K.M. was indicted for three counts each of the aggravated sexual assault of C.T. and K.T., was found guilty of the anal penetration of C.T., and was sentenced to life imprisonment.  Stephens did not see how L.M. could not have known that the girls "were being raped repeatedly over the course of several years."  Stephens stated that it "can't even possibly be true" that L.M. did not know and had not been informed about the acts committed against her children by

K.M.  In preparing for K.M.'s trial, Stephens stated that she called L.M and summarized the details of the case, telling L.M. that K.M. had raped both girls.  She believed L.M. stated that she "couldn't be expected to help" them.

Donna Martinez, a licensed professional counselor, testified that she began counseling both children in August 2008.  She stated that if L.M. testified that she did not know anything had happened to the children until she received a letter from C.T. last year, she would consider that "a full lie."  According to Martinez, C.T. told L.M. what had occurred on more than one occasion, but L.M. did not believe her and stated that it could not "have possibly been true."  Ashley Gipson, a caseworker and supervisor with the Department, and Jean Stanley, a licensed professional counselor and licensed sex opinion and treatment provider, testified that L.M.'s attitude toward the sexual abuse allegations was that if she did not hear it directly from the girls or see it, it never happened.

At K.M.'s trial for the sexual assault of C.T., L.M. testified that C.T.'s anus was scratched because she had pinworms.  She also told Stephens that she believed something had happened to C.T., but that she did not believe K.M. had done anything. L.M. stated that she was lying under oath at K.M.'s trial because she had been threatened by K.M.'s mother that if she did not do so, she would make sure she lost custody of her son and daughters.  Stephens stated that L.M. never supported the girls, never believed them, and "fought [Stephens] tooth and nail" in prosecuting K.M.

Before the children were removed in 2006, C.T. told L.M. that she had blood in her underwear.  L.M. noticed one or two quarter-size spots of blood.  Because she was concerned, L.M. talked to K.M. about it, and he said that it might be from a previous bicycle accident.  Vivian Mobley, the guardian ad litem for C.T. and K.T., testified that L.M. told her she might have known that K.M. was raping the girls because she saw blood in one of the girls' underwear.  According to Gipson and Stanley, L.M. explained that the "tear" to C.T.'s genitals could have been from a bicycle wreck.

Further, L.M. stated that one night she awoke to go to the bathroom and heard C.T. crying.  When she went into the bedroom, she noticed that the overhead light was on and K.T. was asleep. C.T. was sitting up on the bed and K.M. was kneeling beside the bed.  L.M. asked K.M. what the problem was and he cursed or yelled at her.  She went back to their bedroom.  According to Mobley, L.M. never reported this incident.

In August 2007, L.M. was indicted for two counts of endangering a child because L.M. allegedly allowed the girls to live with K.M., a registered sex offender. Although L.M. stated that she was aware that K.M. had been previously imprisoned on a charge of sexual assault, she also said she was not "fully aware" that K.M. was a sex offender until he was arrested in 2006. Stephens testified that in a letter to K.M., L.M. contradicted her statement that she did not know K.M. had been a convicted child rapist or who he had raped. L.M. admitted writing letters to K.M. while he was in prison, telling him that she loved him, and sending him Father's Day letters in June 2008. She did not tell K.M. how much she despised him for sexually assaulting her children because she did not want to jeopardize custody of her son. However, at trial, L.M. stated that she was divorcing K.M. and admitted that K.M. sexually assaulted C.T. and K.T.

Although there is some conflicting evidence that some of L.M.'s actions or omissions were the result of her fears of losing custody of the children, the trial court could have resolved this conflict in favor of its finding. The trial court could have found that L.M. ignored signs that C.T. and K.T. were being sexually abused by K.M., refused to believe that K.M. sexually assaulted her children, testified on behalf of K.M., and wrote love letters to K.M. even after he was imprisoned for the sexual assault of C.T. Based on this finding, the trial court also could have determined that L.M. engaged in conduct that endangered the children's physical or emotional well being. Although there is some disputed evidence, this evidence is not so significant that a reasonable trier of fact could not have reconciled this evidence in favor of its finding and formed a firm belief or conviction that L.M. engaged in conduct or knowingly placed C.T. and K.T. with persons who engaged in conduct which endangered their physical or emotional well being. Accordingly, the trial court did not abuse its discretion in determining that L.M.'s fourth point for appeal was frivolous.[2]

### BEST INTEREST OF THE CHILD

In her sixth point for appeal, L.M. argues that there is factually insufficient evidence that termination was in the best interests of the children.

---

[2] As only one ground is required to support a termination of parental rights, we need not address L.M.'s arguments under her third and fifth points on appeal challenging the trial court's findings regarding subsections (D) and (O) of section 161.001 of the family code.

<u>**Applicable Law**</u>

In determining the best interest of the child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. ***Holley v. Adams***, 544 S.W.2d 367, 371-72 (Tex. 1976).

This list is not exhaustive, but simply indicates considerations that have been or could be pertinent. ***Id.*** However, the best interest of the child does not require proof of any unique set of factors nor limit proof to any specific factors. ***In re D.M.***, 58 S.W.3d at 814. The ***Holley*** test focuses on the best interest of the child, not the parent's best interest. ***Dupree v. Texas Dep't of Protective & Regulatory Servs.***, 907 S.W.2d 81, 86 (Tex. App.–Dallas 1995, no writ).

<u>**Analysis**</u>

According to Martinez, C.T. stated that the only way she could return to her mother is if L.M. swore that she would never have a boyfriend in her home again. Holman stated that C.T. talks about being adopted and living where someone will protect her. Martinez stated that K.T. does not want to return to L.M. because she does not trust her. According to Holman, K.T. never wants to see L.M. again. Carmen Rita Kaimann, Ph.D., a licensed psychologist, tested both C.T. and K.T. Kaimann stated that C.T. suffers from depression and post traumatic stress disorder (PTSD). According to Kaimann, K.T. appeared to be more traumatized than C.T., appeared to have more severe PTSD symptoms, had more disorganized thinking, was very depressed, and was very emotionally labile. According to Kaimann, K.T. reported hearing strange voices and was "emotionally disturbed." Martinez and Holman describe C.T. as being angry, aggressive, and defiant, and K.T. as being withdrawn, fearful, and shaken.

Ray Thomas Johnston, a licensed counselor, testified that he has been counseling L.M. since January 2009. According to Johnston, L.M. was very "forthcoming" in telling him that her daughters had been sexually assaulted and that she had made some "very

egregious errors" in not taking steps to protect them. L.M. told Johnston that she did not heed some warning signs including blood in the underwear and finding K.M. in the room with a daughter. Johnston stated that he has seen L.M. accept responsibility for what she has done, although he believes that L.M. needs to work on her parenting skills, including protecting and nurturing her children. According to Stanley, L.M. never took on the role as a parent to protect or meet the children's emotional and psychological needs. L.M. testified that she has a wonderful support system and has been able to take care of herself. She also admitted that she was under a tremendous amount of pressure in 2006 from K.M. and his mother and that she was trying to protect all of her children.

Kaimann stated that it was in C.T.'s and K.T.'s best interest for L.M.'s parental rights to be terminated because L.M. proved to be incapable of providing a safe and stable home environment. Martinez, Gipson, and Holman believe it is in the children's best interest for L.M.'s parental rights to be terminated. Although there is some conflicting testimony, the trial court could have disregarded L.M.'s testimony that she believed the children had been sexually assaulted, and that she could parent and protect the children. The trial court could have found that L.M. failed to demonstrate that she could protect the children, ignored signs of sexual abuse, and refused to accept the girls' outcries. Further, the trial court could have determined that neither child wanted to return to L.M., that both children had severe psychological problems as a result of the sexual abuse, and that L.M. would be unable to adequately parent the children. Although there was some disputed evidence, this evidence is not so significant that a reasonable trier of fact could not have reconciled this evidence in favor of its finding and formed a firm belief or conviction that terminating L.M.'s parental rights was in the best interest of C.T. and K.T. Accordingly, the trial court did not abuse its discretion in determining that L.M.'s sixth point for appeal was frivolous.

## DISPOSITION

The *order* of the trial court is *affirmed*.


**JAMES T. WORTHEN**
Chief Justice

Opinion delivered November 30, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(PUBLISH)